F2OKSCHM

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  BRUCE SCHWARTZ, individually
   and on behalf of all others
4  similarly situated,

5            Plaintiff,

6       v.                           14 CV 9525 KPF)

7  HSBC BANK USA, N.A.,

8            Defendant.

9  ------------------------------x
                                  New York, N.Y.
10                                February 24, 2015
                                  10:20 a.m.
11
   Before:
12
                  HON. KATHERINE POLK FAILLA,
13
                                       District Judge
14
                         APPEARANCES
15
   BROMBERG LAW OFFICE PC
16      Attorneys for Plaintiff
   BY:  BRIAN LEWIS BROMBERG
17      -AND-
   HARLEY JAY SCHNALL
18
   GREENBERG TRAURIG LLP
19      Attorneys for Defendant
   BY:  LOUIS SMITH
20      AARON VAN NOSTRAND

21

22

23

24

25

F2OKSCHM

1          THE DEPUTY CLERK:  In the matter of Bruce Schwartz

2     versus HSBC Bank USA.  Counsel, please identify yourselves,

3     beginning with the plaintiff.

4          MR. BROMBERG:  Brian Bromberg, Bromberg Law Office PC,

5     for the plaintiff.  Good morning, your Honor.  Would you prefer

6     we sit or stand?

7          THE COURT:  I prefer that you stand.  It's just going

8     to require you to speak very clearly, near a microphone,

9     because if you sit, then I'm going to see my deputy's head

10    instead of yours.

11         MR. SCHNALL:  All right.

12         THE COURT:  All right, thank you.

13         MR. SCHNALL:  Harley Schnall, Law Office of Harley

14    Schnall, for the plaintiff.  Good morning, your Honor.

15         THE COURT:  All right.  Mr. Schnall, hopefully you'll

16    be able to get in earlier next time.

17         MR. SCHNALL:  Yes.  My apologies.

18         THE COURT:  All right.

19         MR. SMITH:  Good morning, your Honor.  Louis Smith,

20    Greenberg Traurig, appearing on behalf of Defendant HSBC Bank

21    USA, N.A.

22         MR. VAN NOSTRAND:  Good morning, your Honor.  Aaron

23    Van Nostrand, also from Greenberg Traurig, on behalf of HSBC

24    Bank USA, N.A.

25         THE COURT:  Let me begin with a housekeeping matter

F2OKSCHM

1      that's off the record.

2                  (Discussion off the record)

3                  THE COURT:  Back on the record.

4                  Mr. Smith, are you going to be doing the discussions

5      this morning or will Mr. Van Nostrand?

6                  MR. SMITH:  It will be me, your Honor.

7                  THE COURT:  Let's talk, please, about your

8      contemplated motion to dismiss.  Part of it, sir, may be

9      obviated, for all I know, because we're going to hear from your

10     adversary soon and they wish to amend the complaint, but I want

11     to understand your view, sir, as to what issues were decided by

12     Judge Engelmayer in his case.

13                 I have read the opinion, so I have views of my own but

14     I'd like to hear yours.

15                 MR. SMITH:  Thank you, your Honor.  There was a

16     substantially similar complaint filed in that action as it

17     relates to this late fee claim --

18                 THE COURT:  But they returned the money because of

19     Hurricane Sandy.  Why couldn't they return the money and save

20     yourself this lawsuit?

21                 MR. SMITH:  It would have been better; I agree, your

22     Honor, it would have saved that.

23                 THE COURT:  All right.

24                 MR. SMITH:  The relief that was sought in that case,

25     your Honor, they sought actual damages, statutory damages,

F2OKSCHM

```
 1      injunctive relief, declaratory relief, all under TILA.  And
 2      what Judge Engelmayer found was that once he made the
 3      determination that there was no actual damages, the rest of the
 4      claim had to go and the complaint in its entirety was dismissed
 5      because he found the statutory provision that they rely on in
 6      this case, again, does not allow for statutory damages.  And he
 7      also found through his ruling -- because this relief was sought
 8      in the complaint, it was briefed in the motion to dismiss --
 9      that there is no injunctive relief and there is no declaratory
10      relief.  These are generally well settled principles under TILA
11      as well.
12              THE COURT:  Let me just talk a little more about what
13      you have just said.  I might well agree with you that the issue
14      of whether there are statutory damages available may have been
15      decided by Judge Engelmayer because it was necessary to his
16      decision and it does seem to be strikingly similar factuals,
17      facts alleged, just a different date.  But when it came time
18      for the discussion of actual damages, what he said was, I can't
19      find any actual damages because they have refunded this money
20      and therefore I'm not going to find out actual damages, I'm not
21      going to grant injunctive relief, I'm not going to give any
22      declaratory relief.
23              Here, based on our initial exchange this morning,
24      there was a late fee imposed of some sort that was not
25      refunded, and I imagine there may have been an interest charge
```

F2OKSCHM

1      for the late payment.  So I can't really say that Judge

2      Engelmayer's decision gives me a result that I must rely on on

3      these other issues, correct?  Isn't this case basically what

4      would have happened in Judge Engelmayer's litigation if only

5      there hadn't been the repayment of fees?

6            MR. SMITH:  But in Judge Engelmayer's case, had Judge

7      Engelmayer felt that there would have been an opportunity for

8      injunctive relief or declaratory relief, whether there was

9      actual damages or not, he could have said, okay, look, you have

10     no actual damages, that's out of the case, I find you don't

11     have statutory damages, because he explains that in his ruling

12     and his reasoning under TILA, but he could have said, but I'm

13     going to let you go forward and try to get declaratory relief,

14     try to get injunctive relief under TILA because those are still

15     avenues that are available.

16            He didn't do that.  He said --

17            THE COURT:  No, but I thought he didn't do that

18     because he found an absence of actual damages.  Wouldn't that

19     have impugned the standing of Mr. Schwartz to have made these

20     claims for declaratory relief and injunctive relief because

21     there was no injury that could be redressed by the lawsuit

22     before Judge Engelmayer?

23            MR. SMITH:  I didn't see it as hinging on the actual

24     damages point.  I saw it as the determination that this, just

25     like statutory damages, wasn't a category of relief available

F2OKSCHM

1    to the plaintiff, likewise injunctive relief, likewise

2    declaratory relief.  And these are principles that are not

3    controversial in the context of TILA.  We would submit there's

4    well-established law in this area.

5         THE COURT:  Okay.  Let me understand, please, the

6    breach of contract claims that you seek dismissed.

7         MR. SMITH:  To sort of frame the context, again, going

8    back to the prior case, in the original complaint that was

9    filed in the case before Judge Engelmayer, they asserted a

10   substantially similar breach of contract claim, basically

11   saying that there is an agreement in the contract that says

12   federal law controls and, by charging a late fee, that

13   agreement was breached.  Unlike in this case, where we're doing

14   a premotion conference, we just filed our motion to dismiss.

15   Part of that motion included the card member agreement, so the

16   plaintiff then received the card member agreement.  Our

17   argument was a very simple one, which is basically set forth in

18   the letter I sent to your Honor, that these terms don't exist

19   in the contract and you need to point to specific terms, you

20   can't here, and therefore there's no basis for the claim.

21        In response to our motion to dismiss, the first motion

22   to dismiss, the plaintiff amended the complaint.  In the

23   amended complaint, they completely dropped the breach of

24   contract claim.  We understood from that that they saw there

25   really was no validity or basis to the breach of contract

F2OKSCHM

1   claim, it did not contain the provisions that they alleged in

2   the complaint, and therefore in the amended pleading, that

3   disappeared from the case.

4           THE COURT:  I'm sorry, just to be clear, this is in

5   the Judge Engelmayer case?

6           MR. SMITH:  Correct.

7           THE COURT:  Thank you.  But here we are in my case.

8           MR. SMITH:  Here we come back to your case now and,

9   again, now this claim again appears.  So the allegation of the

10  provision in the contract is on information and belief.  So the

11  allegation is on information and belief even though the

12  contract was part of the record in the first case, there has

13  been some amendment to the contract but nothing that's going to

14  change the analysis here.

15          THE COURT:  And just so I am clear, your position

16  would be that the document, the card member agreement or the

17  contracts that you provided to Judge Engelmayer, are

18  necessarily implicated by the pleading such that it would not

19  be beyond the scope of 12(b)(6) for me to review it in

20  connection with a motion to dismiss?

21          MR. SMITH:  Exactly.  And Judge Engelmayer made

22  precisely that finding.  And there's a Second Circuit case that

23  talks about, even in the context of TILA, that you can look at

24  these agreements and the like.  And here, they're plainly

25  relying on it because they're saying they have a breach of

F2OKSCHM

1    contract claim and they're pointing to alleged provisions in

2    the agreement itself.

3         So, again, from our view, it's quite simple:  Here's

4    the agreement, here's what they're alleging, it's not in the

5    agreement, there's no basis for the claim, the claim should be

6    dismissed.

7         THE COURT:  Okay.  Now, at some point I am going to

8    let the folks at the front table talk, and when they do,

9    they're going to explain this to me but they have indicated to

10   me in their responsive letter that they want an opportunity to

11   amend, to correct, any deficiency.  So obviously we're going to

12   have to, at least for a couple of weeks, table discussion of

13   your motion to dismiss to see if the problems you've identified

14   can be or not remedied by an amended pleading.

15        Is it your contention, sir, that there is no

16   allegation that can be pled consistent with the card member

17   agreement that would support a breach of contract claim?

18        MR. SMITH:  That is correct, your Honor.  Their claim,

19   to the extent they have any claim that they can allege, is

20   going to be based on TILA, it's not going to be based on the

21   card member agreement.

22        THE COURT:  Okay.  Let's also talk about your third

23   point, which is, you believe that the class claims should be

24   stricken.  Now, do you mean in their entirety or only insofar

25   as -- well, let me hear from you.

F2OKSCHM

1          MR. SMITH:  We just focused on a very narrow point and

2      it's the start date of the class period, because they included

3      dates in 2008, 2009.  It wasn't really clear to us why the

4      dates would vary but there were two different dates that were

5      included there.  But what we thought the thinking behind it

6      was, was relating to the breach of contract aspect because

7      you're going back in time and in considerable ways, and with

8      TILA it's a one-year statute of limitations, that's it.

9          So if we have a case that's going forward, to the

10     extent the case goes forward, it, in our view, will go forward

11     limited to TILA.  And if you're dealing with a TILA case, it's

12     a one-year statute of limitations; there's no reason to be

13     defining a class going back to 2008, 2009, and creating all

14     that additional complexity that goes along with a length in

15     class period.

16         THE COURT:  Okay.  I'm going to hear from the folks at

17     the front table and then I will come back to you if I have any

18     questions.  Thank you.

19         MR. SMITH:  Thank you, your Honor.

20         THE COURT:  Mr. Schnall, I will be hearing from you,

21     sir?

22         MR. SCHNALL:  Yes.

23         THE COURT:  Why don't we begin at the beginning.  You

24     heard me talk with Mr. Smith about basically my read of Judge

25     Engelmayer's decision in the prior case.  What is your view as

F2OKSCHM

1   to whether any issues are given preclusive effect by his

2   decision?

3           MR. SCHNALL:  Well, frankly, we don't think any of the

4   issues are given preclusive effect.

5           THE COURT:  Not even statutory damages?

6           MR. SCHNALL:  Not even statutory damages.

7           THE COURT:  May I ask why that is, sir?

8           MR. SCHNALL:  Well, the case with Judge Engelmayer was

9   quite unique circumstances.  As your Honor mentioned, the fee

10  was refunded as a result of Superstorm Sandy and it took the

11  case out of what we felt would be a viable case.

12          In another respect, the case differs in that in

13  Schwartz there were no interest charges.  I believe there was a

14  zero percent interest rate applicable to his account.  So there

15  was just a late fee and then that late fee was refunded.

16          Here we have not only a late fee but a late posting of

17  the payment three days later.  And it was received, according

18  to U.S. Postal Service records, and that's why the breach of

19  contract claim, we believe, also will stand here.  They're

20  different circumstances than the case with Judge Engelmayer.

21          THE COURT:  Let's break those apart, please, for a

22  second.

23          I didn't see anything in Judge Engelmayer's discussion

24  of statutory damages that suggested that his decision hinged on

25  the particular events involving Superstorm Sandy, I didn't but,

F2OKSCHM

1    okay, I'll look at it.  But your view is that these were sort

2    of a sui generis set of facts and that his decision should be

3    read only in connection with that series of facts?

4              MR. SCHNALL:  Or we would make that distinction, even

5    if he didn't.

6              THE COURT:  I'll just tell you now, you have stronger

7    arguments in your arsenal for other areas of your complaint

8    than that one.  Just know that that's one that's going to be

9    interesting and I'm not really moved by it but, okay, we'll

10   see.

11             MR. SCHNALL:  The fee was refunded.  The question

12   remains whether Schwartz -- the title violation is whether a

13   payment was treated as late.  And, yes, the fee was refunded

14   but because of the unusual circumstances in the case, we didn't

15   pursue it.  Perhaps Mr. Schwartz's account was treated as late

16   and there are implications to that.  When one is marked as

17   late, the next late fee is an enhanced late fee.

18             THE COURT:  But, sir, you just said something I want

19   to focus on, you said perhaps we didn't pursue that.  What do

20   you mean?

21             MR. SCHNALL:  Well, because the case was so unusual in

22   that the fee was refunded because of Superstorm Sandy, we did

23   not know whether Mr. Schwartz's account was really affected at

24   all.

25             THE COURT:  Okay.

1          MR. SCHNALL:  In this case, we intend to show that it

2     was affected in a number of ways.  First and foremost, there is

3     a late fee and his payment was treated as late.

4          THE COURT:  Okay.  Keep going.

5          MR. SCHNALL:  In addition to that, there is, again,

6     the failure to post the payment on the date that it was

7     received.  So not only is there the late fee, but there is the

8     violation of not posting the payment, payments received by

9     5:00 p.m., under the statute.

10          THE COURT:  Okay.  Shall we switch to your breach of

11     contract claim?

12          MR. SCHNALL:  Sure.

13          THE COURT:  Mr. Smith advises me that I should not be

14     looking at TILA in this instance, and I am not, I should be

15     looking at the contract.  And I presume the contract is the

16     card member agreement.  Is there something else that you're

17     looking at?  Basically, what is the source of the contract

18     claims that you're now alleging?  Let me stop for a moment.

19     I'm sorry.

20          You've indicated a desire to amend your pleadings.

21     What are you going to amend to basically remedy or address

22     issues that have been raised by the defendant's letter?

23          MR. SCHNALL:  Well, we are going to, for one thing,

24     add an additional Truth In Lending claim that we have

25     discovered.

F2OKSCHM

1          THE COURT:  And that is what, sir?

2          MR. SCHNALL:  I'm sorry?

3          THE COURT:  That is what, sir?

4          MR. SCHNALL:  It's a disclosure of violation that the

5   defendants have made on Mr. Schwartz's statements totally apart

6   from this violation here.

7          THE COURT:  And this is something that you knew about?

8   How did you not know this at the time you filed the original

9   complaint?

10         MR. SCHNALL:  Because it was on a different periodic

11   statement and it came up in review of Mr. Schwartz's statements

12   when he made them available.

13         THE COURT:  Okay.  Go ahead, please continue.

14         MR. SCHNALL:  So we intend to amend to add a Truth In

15   Lending claim, we intend to amend to clarify the breach of

16   contract claim, and we are looking into amending under other

17   consumer statutes.

18         THE COURT:  Okay.  Now, again, focusing on the breach

19   of contract claim, again, what is the breach, sir?  What

20   provisions were breached?

21         MR. SCHNALL:  Well, first, the agreement provides that

22   HSBC would abide by federal law.  And federal lending law

23   requires that a payment that comes in the day after a holiday

24   by mail is not to be treated as late if the due date was the

25   holiday.

F2OKSCHM

1          In addition, the agreement makes reference to

2    instructions on the billing statements, how to make payments.

3    So we believe that the agreement incorporates the periodic

4    statements by reference.

5          THE COURT:  And from that, you discern what, sir?  I

6    need you to connect the dots on that last part.

7          MR. SCHNALL:  That HSBC was required to, or HSBC

8    committed to, crediting payments by a certain cutoff time and

9    they did not credit the payment made by Mr. Schwartz.

10         THE COURT:  As to the former of your breach of

11   contract claims -- I just want to make sure I understand it --

12   what I think you're saying is, having committed in this

13   agreement to abiding by federal law, the violations that you

14   allege of the Truth In Lending Act are necessarily, in addition

15   to being violations of federal law, breaches of the contract

16   and specifically that provision where they said they would

17   abide by federal law?

18         MR. SCHNALL:  Yes.  Plus, they also allowed for more

19   generous cutoff time for federal law in the billing statements.

20   And we believe that's part of the agreement, and they breached

21   the contract there.

22         THE COURT:  Okay.  And then can you talk a little bit

23   about the class allegations that you wish to keep and, in

24   particular, what Mr. Smith was saying about the one-year

25   statute of limitations for Truth In Lending Act classes or

F2OKSCHM

1    claims?

2          MR. SCHNALL:  Well, yes, there is a one-year statute

3    of limitations --

4          THE COURT:  Okay.

5          MR. SCHNALL:  -- strictly on the Truth In Lending

6    claim.  So we would agree that would apply.

7          THE COURT:  Okay.  And would you modify the

8    allegations in your complaint to make clear -- the class that

9    you seek is a class of individuals who suffered violations of

10   the Truth In Lending Act or suffered injuries as a result of

11   defendant's purported violations of the Truth In Lending Act

12   and not, for example, a class of people whose contracts were

13   breached?  Or are you doing both?

14         MR. SCHNALL:  We are doing both.  They coincide, the

15   claims, to a great degree.

16         THE COURT:  But how far back are you looking for this

17   class?

18         MR. SCHNALL:  We're going back to the statute of

19   limitations on breach of contract because we believe that the

20   claims are coincidental.

21         THE COURT:  Okay, all right.  Are there other

22   amendments that you contemplate making to your complaint?

23         MR. SCHNALL:  None other than I've described.

24         THE COURT:  Okay.  And do you agree that you are not

25   within the period of amendment as of right, that this is

F2OKSCHM

1    something that would have to be addressed either by order of

2    the Court or perhaps with the consent of the parties in a

3    stipulation, right?  The real issue, sir, is -- I'm going to be

4    talking to your adversary in a moment and I am going to see how

5    he feels about your proposed amendments -- you don't believe

6    that you can just make them as of right; is that correct?

7              MR. SCHNALL:  I'm not sure, because we are --

8    defendants haven't answered yet but --

9              MR. BROMBERG:  Your Honor, if I may?

10             THE COURT:  Yes, please.

11             MR. BROMBERG:  Just for the record, Brian Bromberg.

12             Two points:  First of all, with respect to the statute

13   of limitations, the statute of limitations for the breach of

14   contract claim, we believe, it would either be state by state,

15   like six years for New York or various statute of limitations

16   for the other states, or it would possibly be the three-year

17   Delaware statute of limitations for breach of contract.  I

18   guess that matter would have to be decided as a result of the

19   various motions on the case, probably at the point of class

20   certification.

21             THE COURT:  Yes.

22             MR. BROMBERG:  With respect to the breach of contract

23   claim, I just want to make one thing clear:  The reason we

24   withdrew the breach of contract claim on the other case had to

25   do with the fact that when the money was refunded as a result

F2OKSCHM

1    of Superstorm Sandy, we no longer had actual damages.  Without

2    actual damages, you can't make a breach of contract claim.

3    Here we have actual damages.  So that's a large part of the

4    reason why there's a breach of contract claim here that we're

5    not withdrawing.

6            THE COURT:  Sir, just so I am clear, what are the

7    actual damages?  What was the late fee that was assessed on

8    Mr. Schwartz's account?

9            MR. BROMBERG:  Oh, that was $25, your Honor.

10           THE COURT:  And was there an interest charge?

11           MR. BROMBERG:  I'd have to -- there was some interest

12   charge, yes, and we'd have to -- three days' worth of interest.

13           THE COURT:  Do you know how much that amounted to,

14   sir?

15           MR. SCHNALL:  In the neighborhood of a dollar.

16           MR. BROMBERG:  In the neighborhood of a dollar, your

17   Honor.

18           THE COURT:  So he has actual damages of $26?

19           MR. BROMBERG:  Roughly, yes.

20           THE COURT:  I understand you believe that he has

21   statutory damages and that there are a whole class of people

22   who fit into the parameters that you're identifying for him,

23   but just I wanted to understand what we're dealing with, with

24   him.

25           MR. BROMBERG:  Yes.  Well, your Honor, the Seventh

F2OKSCHM

```
1    Circuit said only a mad man would sue on an individual basis
2    for $20.  So that's the reason why we're here as a class
3    action.  I think it was Judge Posner maybe Judge Easterbrook.
4              THE COURT:  Frequently confused, sir.
5              MR. BROMBERG:  Yes.
6              THE COURT:  No, that's fine.  I'm just saying, given
7    the experience that Mr. Schwartz had previously, it is
8    surprising that he has not learned to pay his statements on
9    time, but I guess that's why we're here.
10             MR. BROMBERG:  No, with respect to the time for the
11   12(b)(6) amendment, ordinarily, I believe there's ten or
12   fifteen days -- actually, it's been adjusted to weeks now, so I
13   believe it's 14 days after the 12(b)(6) motion, that we have a
14   right to amend as of right.
15             THE COURT:  Okay.
16             MR. BROMBERG:  I don't know whether that would date
17   from the date of the premotion conference letter or date from
18   the date of the actual --
19             THE COURT:  I think it actually dates from the actual
20   motion being made, but let me just try and subvert the whole
21   discussion.
22             Mr. Smith, do you consent to their amending?
23             MR. SMITH:  Yes, your Honor.
24             THE COURT:  Okay.  Then we don't have to worry about
25   this at all.  Thank you, Mr. Smith.
```

F2OKSCHM

1           MR. SMITH:  Yes, Judge.

2           THE COURT:  How quickly can we see your amended

3  complaint?

4           MR. BROMBERG:  I believe that we might need 30 days,

5  your Honor.

6           THE COURT:  30 days?  Really?

7           MR. SCHNALL:  Well, we need to investigate this other

8  new claim that's popped up and the consumer statute as well a

9  little further and we want to make sure we get it right.

10           THE COURT:  I will do this, but let the record reflect

11  my complete stupefaction that you need that much time to do it.

12  I will do it but I think that's ludicrous.

13           MR. SCHNALL:  I'm sorry, your Honor.  There's also

14  some -- it's just that I'm in the middle of a cert petition --

15           THE COURT:  Then at least be honest with me.  Don't

16  say it's because of this case and the difficulties of this

17  case.  It's because you've got other things going on that you

18  consider to be more important than this.  This is not a wise

19  thing to suggest to me but at least it's an honest one.

20           So by March 27th, because I'll give you to the Friday,

21  we will have your amended complaint.

22           Mr. Smith, I don't want to presuppose anything --

23  gentlemen, you may sit down -- but I have a sneaking suspicion,

24  sir, that upon seeing this amended complaint, you will

25  nonetheless wish to move for some form of dismissal as to some

F2OKSCHM

1   part of the complaint.  So I don't want to delay the

2   proceedings in this case unnecessarily by having another round

3   of premotion submissions and a discussion before me.  If you

4   tell me that actually there's a high likelihood that you won't

5   move to dismiss, then that's great but I think you're not going

6   to be able to say that.

7          MR. SMITH:  I am not.  And I think in light of the

8   description we've got of where they're going, there's an

9   extremely high likelihood that we will move in response to the

10  complaint.

11         THE COURT:  Can I have your motion by the 1st of May?

12         MR. SMITH:  Yes, your Honor.

13         THE COURT:  Can I have the opposition from the

14  plaintiffs by the 1st of June?

15         MR. BROMBERG:  Yes, your Honor.

16         THE COURT:  Okay.  And can I have the reply, if any --

17  and I am not saying you have to do one -- by the 15th?

18         MR. SMITH:  Yes, your Honor.

19         THE COURT:  Great.

20         Mr. Schnall and Mr. Bromberg, would you consider,

21  while you're amending, adding some of the documents that you

22  think are the contracts as exhibits to your complaint?

23  Certainly the defendants can bring them up in their motion but

24  I just wonder whether you might want to include them to show me

25  specifically what you're looking at when you can find

F2OKSCHM

1  contractual provisions that you believe were breached.

2          MR. BROMBERG:  Yes, your Honor.

3          THE COURT:  At least consider it?

4          MR. BROMBERG:  No, no, absolutely.

5          THE COURT:  All right.  Let me go back to my notes,

6  then, and see if there's anything else we should be looking

7  about today.

8          I think that's all I've got.  Mr. Bromberg,

9  Mr. Schnall, is there -- wait, we have someone standing.

10 Mr. Smith, is there something else you want to raise, sir?

11         MR. SMITH:  Your Honor, there is a conference

12 scheduled before your Honor for next Wednesday an initial

13 conference.

14         THE COURT:  We will take that off the calendar.  Let

15 the record reflect that that conference has been adjourned.  I

16 think I'll have to do something a little bit more

17 minute-order-like for the court, but we will take the

18 conference off because, you're right, while I'd love to see you

19 all again, it would take time away from the work that you're

20 doing in trying to move this case forward, so I won't do that.

21         MR. SMITH:  Thank you very much, your Honor.

22         THE COURT:  Thank you for reminding me of that.

23         Anything else, Mr. Smith?

24         MR. SMITH:  No, your Honor.  That's all.

25         THE COURT:  Anything else, Mr. Bromberg or

F2OKSCHM

1   Mr. Schnall?

2           MR. BROMBERG:  Just to make it clear, with respect to

3   the controlling contract, I guess we're going to get on the

4   phone with defense counsel and make sure we're all in agreement

5   as to which contract governs here before we attach it, because

6   they were mentioning before that there had been some

7   amendments.

8           THE COURT:  I think that makes sense.  I presume that

9   there is a document that was in effect at the end of last year,

10  when these issues arose and when these charges were imposed.

11  So my assumption is, it's whatever contract was in place at

12  that time but perhaps you two may come to a different

13  conclusion.

14          MR. BROMBERG:  The question is, we heard about some

15  amendments, I wanted to make sure we're all in agreement as to

16  which contract governed.

17          THE COURT:  Okay.

18          MR. BROMBERG:  We have a pretty good relationship,

19  things went fine on the last case.  We lost but that's life.

20          THE COURT:  Okay.

21          Mr. Smith, is there an agreement that you believe is

22  operative at this time?

23          MR. SMITH:  Yes, your Honor.

24          THE COURT:  All right.

25          MR. SMITH:  Your Honor, we had filed in the prior case

F2OKSCHM

1   before Judge Engelmayer a document number 9 on the ECF docket,

2   attached to a declaration, the agreement.  As I indicated

3   earlier, it was updated and we will provide the updated version

4   of the agreement to counsel shortly.

5              THE COURT:  Great.

6              And let me ask the parties as well to please get a

7   copy of this transcript.  It would help me a lot, when I get

8   the actual briefing, to look back on what the parties were

9   arguing at the time we were discussing this.  You do not need

10  to get it in an expedited fashion but by the time I get the

11  amended complaint, it might be necessary to have the

12  transcript, so basically in the ordinary course.

13             Anything else today, gentlemen?

14             MR. BROMBERG:  No, your Honor.

15             THE COURT:  All right.

16             Mr. Van Nostrand, perhaps next time they'll let you

17  talk.

18             MR. VAN NOSTRAND:  Nothing from me, your Honor.  Thank

19  you, your Honor.

20             THE COURT:  Excellent.  Let him talk next time.  Thank

21  you very much, all, for coming in today.

22             COUNSEL:  Thank you, your Honor.

23                              *  *  *

24

25