USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 9, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X
                         :

BRUCE SCHWARTZ,                  :
                         :
               Plaintiff,   :      14 Civ. 9525 (KPF)
                         :
          v.              :      OPINION AND ORDER
                         :
HSBC BANK USA, N.A.,      :
                         :
               Defendant.  :
                         :
-----------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      For the second time in as many years, Plaintiff Bruce Schwartz has filed suit against Defendant HSBC Bank, with which Schwartz holds an open end consumer credit card account. This time, Plaintiff alleges that Defendant has violated, and continues to violate, certain provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, and its implementing regulation, Regulation Z, 12 C.F.R. Part 1026. Specifically, Plaintiff alleges that Defendant (i) improperly imposed a late fee and finance charge on Plaintiff's timely payment, in violation of 15 U.S.C. § 1637(o)(2) and the corresponding provisions of Regulation Z; and (ii) failed to disclose the penalty annual percentage rate ("APR") applicable to Plaintiff's account, thereby violating 15 U.S.C. § 1637(b)(12) and the corresponding provisions of Regulation Z. In addition to his claims under TILA, Plaintiff asserts a claim for state law breach of contract based on Defendant's imposition of a late fee and finance charge. For the reasons stated in this Opinion, Defendant's motion to dismiss is

converted to a motion for summary judgment in regards to Plaintiff's claim for improper imposition of fees under TILA and for breach of contract, and is granted on those claims.  Defendant's motion is denied in regards to Plaintiff's APR disclosure claim.

## BACKGROUND[1]

### A.   Factual Background

Plaintiff Bruce Schwartz resides in Queens County, New York, and holds a personal-use open end consumer credit card account with Defendant HSBC. (FAC ¶¶ 7, 11).  In connection with his account, Plaintiff receives periodic billing statements from Defendant.  (*Id.* at ¶ 12).  Plaintiff's November 2013 statement contained payment instructions, which stated in relevant part:

> Payments should be mailed with a single coupon to the payment address shown on the front of this billing statement.  Payments must be made by a single check or money order.... Payments received on any day at the payment address shown on the front by 5:00 p.m. Central Time will be credited to your Account as of the date of receipt.... Payments received after the tim[e] indicated will be credited the next day.   Crediting payments to your Account may be delayed up to five days if the payment is not made as described above, or, is not mailed to and received at the address provided for remittance; is not accompanied by the payment coupon; [or] is received in an envelope other than the envelope provided for remittance[.]

---

[1]    The majority of the facts contained in this Opinion are drawn from the First Amended Complaint ("FAC") (Dkt. #12).  They are taken as true for purposes of this motion.  *See Faber* v. *Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)).  Additional factual material relevant to Plaintiff's late fee and contract claims is drawn from the first declaration of Robert Serritella ("Serritella Decl.") (Dkt. #19) and the deposition of Serritella submitted by Plaintiff ("Serritella Dep.") (Dkt. #37).  For convenience, Defendant's brief in support of its motion to dismiss (Dkt. #16-17) will be referred to as "Def. Br."; Plaintiff's opposition (Dkt. #21) as "Pl. Opp."; Defendant's reply brief (Dkt. #23) as "Def. Reply"; and Plaintiff's surreply brief (Dkt. #36) as "Pl. Reply."

(*Id.* at ¶ 15, Ex. B).

Prior to November 28, 2013, Plaintiff mailed a check for $100 as payment on his account, in an envelope provided by Defendant.  (FAC ¶ 16).  Plaintiff included in the envelope a payment coupon that had been issued by Defendant in conjunction with Defendant's July 2013 billing statement.  (Serritella Decl. ¶ 3).  The payment envelopes issued by Defendant contain a glassine window that permits the return address printed on the payment coupon to show through the envelope window.  (*Id.* at ¶ 4).  The remittance address printed on Plaintiff's July 2013 payment coupon reads "PO Box 5255, Carol Stream, IL 60197-5255."  (*Id.* at ¶ 3; Serritella Dep. 20).  The remittance address printed on Plaintiff's November 2013 payment coupon reads "PO Box 4657, Carol Stream, IL 60197-5255."  (FAC Ex. B).

Plaintiff's payment arrived at the post office in Carol Stream, Illinois, on November 29, 2013, at 8:40 a.m.; the particular post office box at which the payment was received that day, however, is not reflected in the record.  (FAC ¶ 16, Ex. C).  November 28, 2013, was Thanksgiving Day, and consequently Defendant was allegedly not accepting mailed payments on that date.  (*Id.* at ¶ 18).[2]

---

[2] In his declaration, Serritella asserts that HSBC was in fact accepting mailed payments on November 28, 2013.  (Serritella Decl. ¶ 6).  However, it is undisputed that the mailbox in question is located in a United States Post Office, and the Court takes judicial notice of the fact that United States Post Offices were closed on November 28, 2013.  United States Postal Service, *2013 Postal Holidays*, https://about.usps.com/news/events-calendar/2013-federal-holidays.htm (last visited Feb. 8, 2016). Consequently the Court treats the question of whether HSBC was accepting mailed payments to its Carol Stream post office box on November 28, 2013, as a disputed fact and resolves it in Plaintiff's favor for the purposes of this motion.

When Plaintiff received his December 2013 billing statement, it reflected two transactions: a $100 payment credited on December 3, 2013, and a $25 late fee debited on November 28, 2013.  (FAC ¶ 13, Ex. A).  That statement additionally reflected Plaintiff's balance subject to interest; Plaintiff's new balance; the applicable APR rates for purchases and cash advances, respectively; and a warning that a late payment could lead to a late fee assessment and the payment of greater interest charges.  (*Id.* at ¶ 14).  The back of the billing statements received by Plaintiff state that late payments could subject his account to a penalty APR (*id.* at Ex. A, B, E), and Plaintiff's cardholder agreement indicates that the potential penalty APR applicable to Plaintiff's account was 29.99% (as opposed to the prevailing APRs of 16.99% for purchases and 24.99% for Cash Advances, *see id.* at ¶ 19, Ex. D).  Nowhere does Plaintiff's May 2014 billing statement indicate, however, that Plaintiff's account could be subjected to a 29.99% penalty APR, and the "Late Payment Warning" on the front of that statement makes no reference to a penalty APR at all.  (*Id.* at ¶ 21, Ex. E).

## B.    Procedural Background

Plaintiff filed his initial Complaint in this matter on December 1, 2014.  (Dkt. #1).  Defendant notified the Court, by letter dated February 6, 2015, of its intention to file a motion to dismiss, and on February 24, 2015, the Court held a conference regarding Defendant's proposed motion.  (*See* Dkt. #10, 11).  Plaintiff filed his First Amended Complaint on March 27, 2015, in an effort to cure deficiencies identified by Defendant.  (Dkt. #12).  Despite this revision,

Defendant filed the instant motion to dismiss on May 1, 2015. (Dkt. #16). Plaintiff filed his opposition on June 1, 2015 (Dkt. #21), and Defendant filed its reply on June 15, 2015 (Dkt. #23).

On July 6, 2015, Plaintiff moved to strike portions of Defendant's reply memorandum, as well as two declarations of Robert Serritella submitted by Defendant. (Dkt. #28). Defendant filed its opposition to Plaintiff's motion to strike on July 17, 2015 (Dkt. #31), and Plaintiff filed his reply on July 24, 2015 (Dkt. #32). On December 15, 2015, the Court issued an Order denying Plaintiff's motion. (Dkt. #33). The Court additionally advised the parties that it would, pursuant to Defendant's request, partially convert Defendant's motion — specifically, the portion of Defendant's motion addressing Plaintiff's claims of an improperly imposed late fee and interest charge under TILA and state contract law — to one for summary judgment under Federal Rule of Civil Procedure 56. To ensure that Plaintiff would not be prejudiced by this conversion, the Court granted Plaintiff leave to depose an additional witness under Federal Rule of Civil Procedure 30(b)(6), and to file a surreply in opposition to Defendant's motion. Plaintiff filed his surreply on January 22, 2016, thereby concluding the briefing. (Dkt. #37).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the

plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the

complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### 2. Converting a Rule 12(b)(6) Motion into a Rule 56 Motion

Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  A district court may thus convert a motion to dismiss into a motion for summary judgment when the motion presents matters outside the pleadings, provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond."  *Groden* v. *Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995).

"Care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law."  *Ramsey* v. *Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996) (quoting 6 James W. Moore, MOORE'S FEDERAL PRACTICE ¶ 56.12, at 56-165 (2d ed. 1995)).  Where a court elects to consider materials outside the pleadings in regards to specific claims, the court may limit its conversion of the motion to those claims for which outside materials will be considered.  *See Alex*

v. *Gen. Elec. Co.*, No. 12 Civ. 1021 (GTS) (CFH), 2014 WL 2510561, at *4 (N.D.N.Y. June 4, 2014) (stating that a court may "*partially* convert a motion dismiss to a motion for summary judgment" (emphasis in original)); *Levy* v. *Aaron Faber, Inc.*, 148 F.R.D. 114, 117 (S.D.N.Y. 1993) (partially converting a motion to dismiss to one for summary judgment, on the limited issue of the statute of limitations).

Defendant submitted, in support of its Motion to Dismiss, a declaration from Robert Serritella extending beyond the scope of the pleadings (Dkt. #19), and requested that, should the Court find it appropriate, the Court convert the relevant portion of the motion to one for summary judgment (Def. Br. n.5). Plaintiff then submitted evidence beyond the scope of the pleadings in response to Defendant's motion, presumably to counter the extrinsic evidence proffered by Defendant. (Dkt. #22); *See Garcha* v. *City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) ("Where both parties submit extrinsic evidence in support of their positions, a district court may fairly convert a motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56."); *Carruthers* v. *Flaum*, 388 F. Supp. 2d 360, 378-79 (S.D.N.Y. 2005) (converting a motion to dismiss to one for summary judgment where both sides submitted documents outside the pleadings). Defendant then submitted a second — one-page — declaration from Serritella in conjunction with its reply memorandum. (Dkt. #25).

As the Court stated in an Order dated December 15, 2015,

> [w]ere Serritella's first declaration the only extrinsic evidence to be considered upon converting Defendant's motion to one for summary judgment, the Court would be inclined to find that Plaintiff had a sufficient

> opportunity to 'meet the facts outside the pleadings.'
> The submission of Serritella's second declaration with
> Defendant's Reply, however, tips the balance against
> such a finding.

(Dkt. #33 (quoting *Gurary* v. *Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)).  The

Court thus notified Plaintiff that before converting Defendant's motion to

dismiss to a motion for summary judgment in regards to the limited issues

implicated by Serritella's declarations, Plaintiff would have the opportunity to

meet the supplemental extrinsic evidence presented by Defendant through

submission of its own deposition testimony and surreply.  (*See id.*).  Because

Plaintiff received notice and an opportunity to respond to the extrinsic factual

matter presented by Defendant, the Court exercises its discretion to convert

Defendant's motion in regards to Plaintiff's claims for improperly imposed fees

under TILA and for breach of contract to a motion for summary judgment.

### 3.    Motions for Summary Judgment Under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all

the submissions taken together "show[ ] that there is no genuine issue as to

any material fact and the movant is entitled to a judgment as a matter of law."

*See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *accord Anderson* v.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence

of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is

"material" if it "might affect the outcome of the suit under the governing law,"

and is genuinely in dispute "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also*

*Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v.

*Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

### 4.     TILA and Regulation Z

Congress enacted TILA in order to promote the "informed use of credit" by consumers.  15 U.S.C. § 1601(a); *see also Anderson Bros. Ford* v. *Valencia*, 452 U.S. 205, 219-20 (1981).  In so doing, Congress sought to assure "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

Section 1604(a) of TILA granted the Board of Governors of the Federal Reserve System (the "Board") authority to promulgate regulations furthering the provisions of TILA.  Pursuant to this power, the Board enacted Regulation Z, which establishes, *inter alia*, disclosures that credit card issuers must make to consumers and circumstances under which a payment may be credited as late.  *See* 12 C.F.R. §§ 226.1-226.59; *Chase Bank USA, N.A.* v. *McCoy*, 562 U.S. 195, 198 (2011).  Authority to issue regulations pursuant to TILA was subsequently transferred to the Bureau of Consumer Financial Protection (the "Bureau"), which republished Regulation Z — imposing no new substantive obligations on persons subject to the previously enacted regulation — at 12 C.F.R. §§ 1226.1-1226.60.  Truth in Lending Act (Regulation Z), 76 Fed. Reg. 79,767 (Dec. 22, 2011).

**B.      Analysis**

**1.      Collateral Estoppel Partially Bars Plaintiff's Claims for Relief**

The preclusive effect of a prior judgment is dictated by the doctrines of claim preclusion and issue preclusion, the latter of which is also called collateral estoppel.  *See Taylor* v. *Sturgell*, 553 U.S. 880, 892 (2008).  Collateral estoppel, which Defendant asserts in the instant matter, forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Id.*  Issue preclusion can be "offensive" or "defensive."  *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 n.4 (1979).  As relevant here, "[d]efensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost." *Id.*

"By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" claim preclusion and issue preclusion "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana* v. *United States*, 440 U.S. 147, 153-54 (1979)); *Marvel Characters, Inc.* v. *Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("These related but distinct doctrines operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial

resources and protecting parties from the expense and vexation of multiple lawsuits.").

For collateral estoppel to apply, four elements must be satisfied: "[i] the issues of both proceedings must be identical, [ii] the relevant issues were actually litigated and decided in the prior proceeding, [iii] there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and [iv] the issues were necessary to support a valid and final judgment on the merits." *Cent. Hudson Gas & Elec. Corp.* v. *Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).  In assessing these requirements, however, the Court is mindful that "[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinarily harsh and unfair results." *Remington Rand Corp.* v. *Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995).

Defendant argues that Plaintiff is collaterally estopped from asserting claims for statutory damages, declaratory judgment, or injunctive relief under TILA and from asserting a claim for any "hypertechnical" violation of TILA, as such claims are precluded by the judgment in *Schwartz* v. *HSBC Bank USA, N.A.*, No. 13 Civ. 769 (PAE), 2013 WL 5677059, at *1 (S.D.N.Y. Oct. 18, 2013) (hereinafter, the "2013 case").  (Def. Br. 17-20).  As in the current matter, the 2013 case involved claims both for violations of TILA's provisions regarding APR disclosures, and for the imposition of a late fee despite an allegedly conforming payment having been made on a date upon which Defendant was not processing payments.  *Schwartz*, 2013 WL 5677059, at *1-3.  Specifically,

the 2013 case included three claims under TILA and Regulation Z: (i) failure to disclose whether an APR was variable or fixed; (ii) failure to disclose properly the balance subject to interest; and (iii) improper charging of a late fee for a mailed payment. *Id.*

Specifically, Defendant contends that the APR claims in the 2013 case were dismissed because they were "hypertechnical"; that the APR claim in the present matter is likewise "hypertechnical"; and consequently that Plaintiff is estopped from raising his present APR claim. (Def. Br. 17). This syllogism, however, is too clever by half: Collateral estoppel requires an "identity of issues"; that the claims might arguably be members of the same *class* of claims does not satisfy the identity requirement for estoppel purposes. *See Brautigam* v. *Blankfein*, 8 F. Supp. 3d 395, 401 (S.D.N.Y. 2014) ("Under federal law of collateral estoppel, '[u]se of collateral estoppel must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." (quoting *Faulkner* v. *Nat'l Geographic Enters. Inc.,* 409 F.3d 26, 37 (2d Cir. 2005)), *aff'd sub nom. Brautigam* v. *Dahlback*, 598 F. App'x 53 (2d Cir. 2015) (summary order). The APR violation alleged in the present case consists of Defendant's purported failure to disclose the applicable penalty APR in accordance with TILA. (FAC ¶¶ 60-62). This failure might plausibly constitute a "hypertechnical" violation within the framework provided by the 2013 case; but whether the alleged APR violation should be treated as hypertechnical — and, more pointedly, whether hypertechnical violations are

14

nonactionable — is a matter of law that was not decided in the 2013 case. Thus, because the APR claims in the 2013 case dealt with different violations, albeit possibly categorically similar violations, no identity of issues exists and collateral estoppel does not bar the present action.[3]

Turning to Plaintiff's claim for the improper imposition of a late fee, however, Defendant's collateral estoppel argument has more traction. In the 2013 case, Plaintiff contended that HSBC violated § 1637(o)(2) by treating as late a payment received on the business day following a day on which Defendant had not been accepting mailed payments. *Schwartz*, 2013 WL 5677059, at *3-4. In his decision, Judge Engelmayer found that Plaintiff had no valid claim for statutory damages under TILA on the basis of such conduct; rather, TILA limited claims under § 1637(o)(2) to actual damages. *Id.* at *10.

Plaintiff contends here that no estoppel applies, because the question of whether a late fee had been improperly levied was rendered moot in the 2013 case by Defendant's refunding of the fee. (Pl. Opp. 21). Consequently the question of whether a late fee was in fact improperly imposed was not decided. Plaintiff's argument misses the mark, however; Defendant does not contend

---

[3]     Defendant additionally contends that, in the event the Court does not find that the 2013 case precludes Plaintiff's APR disclosure claim, the Court should nevertheless apply the reasoning of Judge Engelmayer's opinion to grant Defendant's motion for dismissal. (Def. Br. 20). However, Defendant has provided almost no briefing on how or why Judge Engelmayer's assessment that certain claims in the 2013 case were mere "hypertechnical" violations of TILA would apply to the very different APR disclosure claims raised in the instant matter; rather, Defendant simply asserts that because no actual damages are alleged, the claim is "hypertechnical and thus nonactionable." (Def. Reply 8). Of course, the lack of actual damages cannot make a violation nonactionable under a statute that explicitly provides for statutory damages. Because Defendant has provided no analysis or argument regarding the purportedly hypertechnical nature of Plaintiff's APR disclosure claim beyond the lack of actual damages, the Court declines to consider the issue.

that the 2013 case precludes Plaintiff's claim under § 1637(o)(2), but rather that it limits the relief available under such a claim to actual damages.  (Def. Br. 17, 20).  Plaintiff addresses the purported preclusion of his claims for statutory damages in a footnote, stating that Judge Engelmayer "erred when he stated that statutory damages are not available for improper treatment of payments as late under 15 U.S.C. § 1637(o)."  (Pl. Opp. 21 n.63).  The Court disagrees; and in any event, the doctrine of collateral estoppel applies to prevent Plaintiff from relitigating this point.

In the 2013 case, the parties conceded that Plaintiff had no actual damages, but Plaintiff nevertheless contended that he was entitled to statutory damages on his § 1637(o)(2) claim.  *Schwartz*, 2013 WL 5677059, at *10.  Judge Engelmayer found that while Schwartz had stated a plausible claim under § 1637(o)(2), that section does not permit a party to recover statutory damages.  *Id.*  Absent any actual damages, Plaintiff had failed to state a claim upon which relief could be granted, and his § 1637(o)(2) claim was dismissed.  *Id.*  Because Judge Engelmayer's ruling on the issue of available damages for a violation of § 1637(o)(2) was "actually litigated and decided" following a "full and fair opportunity for [] litigation" of the issue, and the issue was "necessary to support a valid and final judgment on the merits," Plaintiff is collaterally estopped from seeking relief beyond actual damages on his claim under § 1637(o)(2).  *Cent. Hudson Gas*, 56 F.3d at 368.

16

>2.     **Summary Judgment Is Granted for Defendant on Plaintiff's Claim for Improper Imposition of a Late Fee and Interest Charge in Violation of TILA**

While Plaintiff is estopped from seeking statutory damages on his late fee and interest claim, the Court must consider the merits of his claim in light of his assertion of actual damages.  Regulation Z requires that a creditor must credit mailed payments that are received by 5:00 p.m. as having been received that day, so long as the payment conforms to the creditor's reasonable requirements.  12 C.F.R. § 1026.10(b).  Furthermore, "if a creditor does not receive or accept payments by mail on the due date for payments, the creditor may generally not treat a payment received the next business day as late for any purpose."  *Id.* § 1026.10(d)(1).

Additionally relevant to Plaintiff's late fee and interest claim is 12 C.F.R. § 1026.10(f), which states that

> [i]f a card issuer makes a material change in the mailing address, office, or procedures for handling cardholder payments, and such change causes a material delay in the crediting of a cardholder payment made during the 60-day period following the date on which such change took effect, the card issuer may not impose any late fee or finance charge for a late payment on the credit card account to which such payment was credited.

*Id.* (implementing 15 U.S.C. § 1666(c)).  According to the official interpretation issued by the Bureau, a change in the post office box to which payments should be remitted may in some cases constitute a "material change in the mailing address."  *See* 12 C.F.R. § 1026, Supp. I, Comment 10(f)(4) (describing a card issuer's change of the mailing address for receiving payments "from one post office box number to another post office box number" as a "material

change" in the circumstance where payments received at the old box number would be returned to sender, thereby causing a delay in the crediting of the payment).

Regulation Z permits creditors to specify "reasonable requirements for payments," including "[s]pecifying one particular address for receiving payments, such as a post office box."  12 C.F.R. § 1026.10(b)(2).  When a creditor chooses to accept a payment that fails to conform to its reasonable requirements, as specified on the relevant periodic statement, the creditor must "credit the payment within five days of receipt."  *Id.* § 1026.10(b)(4)(i).

Plaintiff alleges that he submitted a "substantially conforming" payment by mail, and that this payment was received the day following its due date — upon which due date Defendant was not processing mailed payments at its Carol Stream post office box.  (Pl. Opp. 15-17).  Because Defendant was not receiving mail on the payment's due date, Plaintiff argues, Defendant was obligated to treat Plaintiff's payment as timely when it was processed the following business day.  (*Id.* at 15 (citing 12 C.F.R. § 1026.10(b)(4)(ii))).  Defendant responds that Plaintiff submitted a nonconforming payment because he used an incorrect payment coupon, and consequently mailed his payment to the wrong address (specifically to the wrong post office box, albeit within the same post office); Defendant was not required to credit such a nonconforming payment on the day of receipt.  (Def. Br. 10-11; Def. Reply 2).

At the outset, the Court notes a tension between Plaintiff's argument that the switch from one post office box to another constituted a "material change"

to the mailing address for payments, and his tandem contention that a payment sent to the old post office box "substantially conformed" to Defendant's requirements.  After all, it would seem that sending a payment to a materially different address than the one provided would not "substantially conform" to the creditor's reasonable requirements for payment.  Putting this tension aside, the Court finds that Plaintiff's payment did not "substantially conform" to Defendant's reasonable requirements.  Regulation Z specifically lists the designation of a given post office box for the remittance of payments as a reasonable requirement for a creditor to impose upon consumer payments.  12 C.F.R. § 1026.10(b)(2)(v).  Furthermore, the commentary to § 1026.10(b) specifically cites a payment mailed to the incorrect location as an example of a nonconforming payment.  12 C.F.R. § 1026, Supp. I, Comment 10(b)(3).  The fact that the post office box to which the payment was sent is located in the same post office as the correct post office box for receiving payments does not serve to make the payment conforming, as there is no guarantee that the payment will ultimately be received by the creditor.  Furthermore, that Defendant did ultimately receive the payment, despite Plaintiff's use of an incorrect address, does not make it conforming; on the contrary, Regulation Z specifically contemplates that nonconforming payments may nevertheless be received, as it specifies the timeframe within which such payments must be credited to a consumer's account.  *See id.* § 1026.10(b)(4)(i).

Plaintiff's claim that Defendant "promoted" its old remittance address by printing it on his July 2013 payment coupon, such that 12 C.F.R.

19

§ 1026.10(b)(4)(ii) would render a payment sent to that address conforming, is unavailing.  Under § 1026.10(b)(4)(ii), "[i]f a creditor promotes a method for making payments, such payments shall be considered conforming payments … and shall be credited to the consumer's account as of the date of receipt."  As the regulation's text indicates, subsection (b)(4)(ii) governs "[p]ayment *methods* promoted by [a] creditor" (emphasis added); the Commentary provides as examples of possible promoted methods: (i) payment via website, (ii) payment via telephone, (iii) in-person payment, or (iv) payment through an unaffiliated third party.  *Id.* at § 1026.10, Supp. I, Comment (b)(2).  These examples suggest that the promoted method at issue in this matter is payment by mail, not payment to a specific address.

Furthermore, even were Defendant considered to have "promoted" payment to the old post office box within the meaning of Regulation Z, its promotion was explicitly linked — and thus limited — to the billing cycle for which the periodic statement bearing the old address was issued.  (*See* FAC Ex. A (payment instructions on Plaintiff's periodic statement, specifying that mailed payments be sent "to the payment address *shown on the front of your billing statement*," and that payments must be "mailed to and received at the *address provided* for remittance" (emphases added))).  At no point was the old address "promoted" generally as the address to which any payment other than the one reflected on that particular billing statement should be sent; rather, each statement directed the consumer to the front of that particular statement for the relevant remittance address.  (*See id.* at Ex. A, B).

20

Finally, Plaintiff asserts that Defendant's imposition of a late fee and interest was further barred by Regulation Z's prohibition on such fees and charges during the 60-day period following the date upon which "a material change in the address for receiving payments" went into effect, where that change caused the delay for which the fees or charges are imposed.  12 C.F.R. § 1026.10(f).  (Pl. Opp. 18).  This argument implicates the tension discussed *supra*, because having explicitly argued in his opening brief that "Defendant did not even make a material change to the payment address that would justify delaying the crediting of the payment," Plaintiff necessarily implies that Defendant did not make a "material change in the address" that would preclude the imposition of late fees for the following 60-day period.  (*Id.*).

As already discussed, the Court finds that transitioning to a new post office box did indeed constitute a material change to the address.  However, Plaintiff's reliance on § 1026.10(f) nevertheless fails because it was Plaintiff's nonconformity to Defendant's reasonable requirements for payment, and not any change to the address, that caused the delayed crediting of Plaintiff's payment.  Plaintiff argues that "[his] payment would have been indisputably conforming had it been made four months earlier," when the old post office box was in use; ergo, Defendant's change of the address from the old post office box to the new caused the nonconformity.  (Pl. Opp. 17-18).

Were the use of an outdated address the only manner in which Plaintiff's payment failed to conform to Defendant's requirements, Defendant's change in address could indeed be said to have caused the delay in payment.  However,

Plaintiff's representation that his payment "would have been indisputably conforming had it been made four months earlier" is plainly incorrect; under the "When and How to Pay" heading, Plaintiff's billing statements explicitly state that crediting of a payment may be delayed if the payment "is not accompanied by *the payment coupon*." (FAC Ex. A, B (emphasis added)).  The payment coupons issued by Defendant include, in addition to the mailing address for remittance, the applicable payment date for the enclosed payment, and the account balance for that particular billing cycle.  (*Id.*).  In this context, "the payment coupon" referenced in the payment instructions clearly refers to the payment coupon attached to that particular billing statement, and including the wrong periodic statement's coupon with a given payment would fail to conform to the payment instructions, regardless of whether it was received at the correct address.  *Cf.* 12 C.F.R. § 1026.10(b)(2)(i) (providing, as an example of a creditor's reasonable requirement for conforming payments, that "payments be accompanied by the … payment stub").

In sum, Plaintiff's failure to conform to Defendant's reasonable requirements for payment by failing to include the corresponding payment coupon suffices to justify Defendant's delayed crediting of the payment, independent of Defendant's change to the remittance address.  Because Plaintiff failed to make a conforming payment, thereby permitting Defendant to credit his payment as late, the Court grants Defendant's motion for summary

judgment on Plaintiff's claim of improprieties in the imposition of a late fee and interest charge.[4]

### 3. Defendant Is Not Entitled to Dismissal of Plaintiff's Claim for Violation of the TILA Provisions Governing APR Disclosure

#### a. The Statute of Limitations Does Not Bar Plaintiff's APR Disclosure Claim

TILA contains a one-year statute of limitations on damages claims. 15 U.S.C. § 1640(e). Defendant contends that Plaintiff's APR disclosure claim falls outside of this limitation period, arguing that the first instance of the alleged improper disclosures occurred in November 2013, and Plaintiff did not assert his APR disclosure claim until the filing of his First Amended Complaint on March 27, 2015. (Def. Br. 21). As support, Defendant points to district court decisions within the Second Circuit finding that the limitations period for damages claims brought by consumers with open end credit plans begins on the first date upon which a finance charge is improperly imposed. (*See id.* (citing *Baskin* v. *G. Fox & Co.*, 550 F. Supp. 64, 67 (D. Conn. 1982); *McAnaney* v. *Astoria Fin. Corp.*, 04 Civ. 1101 (JFB) (WDW), 2008 WL 222524, *5 (E.D.N.Y. Jan. 25, 2008))). These decisions, Defendant argues, clearly reject a continuing

---

[4]     Defendant additionally contends that § 1026.10(b)(2) does not justify Plaintiff's late fee claim because, according to Serritella, Defendant switched mailboxes on September 28, 2013, thus placing Plaintiff's payment outside the 60-day window during which a creditor may not impose fees caused by such a change. (Def. Reply 4; Dkt #25). Plaintiff responds that a material issue of fact exists as to when the relevant "material change of address" actually occurred, as the date provided by Serritella is merely when the new mail box went live; the relevant change, Plaintiff contends, occurred when the new address was *communicated to customers* as the correct address for remittance. (Pl. Reply 2). Because the Court finds that Plaintiff's use of the incorrect payment coupon — which use Plaintiff does not deny — constituted a nonconforming payment, it need not consider whether Plaintiff's payment occurred within 60 days of the material change to Defendant's payment address.

violation theory for application of TILA's statute of limitations; hence, in the present case, the fact that Plaintiff alleges an improper disclosure in May 2014 does not save his claim, given that the initial allegedly imperfect disclosure occurred seven months prior.  (*Id.* at 22).

Plaintiff's case can be distinguished from the cases on which Defendant relies, however, in that those cases specifically address the improper imposition of finance charges, as opposed to the omission of a required disclosure.  The *Baskin* court explained that "the purpose of [TILA] — to ensure the 'informed use of credit' — is best served if the starting point for the limitation period is deemed to be the date when there has been a finance charge which *puts the consumer on notice* that a violation has occurred."  550 F. Supp. at 67 (emphasis added).  Other courts have applied the same reasoning.  *See McAnaney*, 2008 WL 222524, at *5 (collecting cases).  Significantly, however, the logic of *Baskin* and other similar decisions requires not that the statute of limitations run from the first instance of any given TILA violation, but rather that it be measured from the point at which a consumer would reasonably have been put "on notice that a violation had occurred."  *Baskin*, 550 F. Supp. at 67.

In the circumstance where the violation at issue is the creditor's affirmative act — specifically, an improperly levied charge — a consumer is reasonably on notice upon receiving a billing statement reflecting the improperly imposed charge.  Where, however, the violation consists of the creditor's omission of required information, a consumer cannot fairly to be said to have similar notice.  This is particularly so in the context of a statute for

24

which the stated purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  Placing the burden on consumers to recognize the *absence* of disclosures that are required precisely because consumers lack meaningful information about credit terms would directly contradict the intent of TILA. Rather, in the context where the violation consists of a failure to disclose penalty rates, the statute of limitations period is more appropriately run from the time at which information was omitted from a required disclosure.

Defendant additionally points to *Follman* v. *World Financial Network National Bank*, 971 F. Supp. 2d 298 (E.D.N.Y. 2013), in which the court found that the statute of limitations for a creditor's failure to include certain information in the initial disclosure made upon a consumer's opening of an account ran, at the latest, from the time at which the consumer activated the credit card — notwithstanding the fact that Regulation Z permits required initial disclosures to be made any time prior to the first transaction made using that card.  *Id.* at 303-04.  *Follman* is distinguishable from the instant matter, as here an omission occurred not in a single initial required disclosure, but in multiple disclosures that the creditor was specifically required to make on a periodic basis.[5]

---

[5]     To the extent that the *Follman* court's reasoning might be construed to require the limitations period to run from the first instance of a creditor's improper omission, despite subsequent incomplete required disclosures, the Court disagrees.  The *Follman* court cites *Goldman* v. *First Nat'l Bank of Chicago*, 532 F.2d 10 (7th Cir. 1976), for the proposition that where a violation consists of an omission of certain information, such violation is immediately apparent to the consumer.  *Follman* v. *World Fin. Network Nat'l*

25

The present case is more appropriately compared to the matter addressed in *Schmidt* v. *Citibank (S. Dakota), N.A. (CBSD)*, 645 F. Supp. 214 (D. Conn. 1986), in which "the question of whether each allegedly improper periodic statement constitutes a continuing violation of the Act [was] squarely presented." *Id.* at 216.  In *Schmidt*, the court found that "[c]reditors' continuing statutory duty to provide consumers the information required by the [TILA] creates an obligation to include the required information in each monthly statement," and that each "[f]ailure to do so is a fresh violation of the [TILA]" which triggers anew the one-year limitations period.  *Id.*

The Court finds no tension between *Schmidt* and *Baskin*; where a creditor's affirmative act violates TILA, a notice rule for running the limitations period may reasonably be applied.  Where, however, it is the creditor's omission that constitutes a violation, placing the burden on the consumer to recognize the missing information "would be inconsistent with the spirit, if not the letter, of truth-in-lending legislation." *Schmidt*, 645 F. Supp. at 216.  The Court accordingly finds that, in the context of a creditor's failure to make disclosures required under TILA, the statute of limitations runs from each instance of Defendant's alleged failure to make a required disclosure.  Plaintiff's APR

---

*Bank*, 971 F. Supp. 2d 298, 304 (E.D.N.Y. 2013) (citing *Goldman*, 532 F.2d at 20).  In so doing, *Follman* highlights the distinction between situations where "no disclosure is made," and those in which creditors make an "inaccurate" disclosure (the former being purportedly easy to identify, while the latter may go undetected).  *Id.*  Contrasting "inaccurate" disclosures with the "omission of certain information" creates a false dichotomy, however, as it presupposes a consumer with some baseline knowledge of what *should* be included in a periodic billing statement.  For a consumer without any preconceived expectations, the omission of a given term of the agreement — the applicable penalty APR, for instance — is tantamount to a misrepresentation, as it suggests to the unsophisticated consumer that the term simply does not exist.

disclosure claims are therefore timely in regards to the disclosures contained in billing statements received during the 12-month period prior to his filing of the Amended Complaint.

### b.    Plaintiff Has Stated a Claim for Violation of the TILA Provision Governing APR Disclosures

The Court turns now to the merits of Plaintiff's disclosure claim.  Under 15 U.S.C. § 1637(b)(12), as implemented by Regulation Z, periodic statements issued for a credit card account under an open end consumer credit plan must disclose "[t]he amount of any late payment fee and any increased periodic rate(s) (expressed as an annual percentage rate(s)) that may be imposed on the account as a result of a late payment."  12 C.F.R. § 1026.7(b)(11).  Regulation Z additionally specifies that the due date for payments must be disclosed on the first page of the periodic statement, and that "the amount of the late payment fee and the annual percentage rate(s) required by paragraph (b)(11) of this section shall be stated in close proximity to the due date."  12 C.F.R. § 1026.7(b)(13).

Plaintiff asserts that the May 2014 billing statement issued by Defendant violated 12 C.F.R. §§ 1026.7(b)(11) and 1026.7(b)(13):  The statement displays a "Late Payment Warning" prominently on its front, but that warning contains no mention of a penalty APR.  (FAC ¶ 60, Ex. E).  Rather, the possibility that a penalty APR may be imposed for late payments is mentioned only on the back of the statement, and even there the applicable penalty rate is not listed.  (*Id.* at Ex. E).  Defendant rejoins that Plaintiff "misreads" the requirements of 15 U.S.C. § 1637.7(b)(5) and its corresponding regulatory provision, 12 C.F.R.

§ 1026.7(b)(4), as those provisions require only the disclosure of APRs applied to a given billing cycle. (Def. Br. 13). Defendant's point is inapposite, however, as Plaintiff asserts a violation of § 1026.7(b)(11) and (b)(13), not (b)(4).

Defendant additionally contends that because the account terms indicate that advance notice will be given prior to the imposition of a penalty APR, Defendant was not required to provide on the billing statement a warning that "a late payment could subject [the consumer] to an increased penalty APR." (Def. Br. 15). A late payment would not subject Plaintiff to an increased APR, Defendant reasons; it would subject him to *notice* of a penalty APR. (*Id.* at 15-16). Plaintiff responds by highlighting TILA's APR disclosure requirements' intended role as an "early warning system for consumers," and argues that in light of this purpose, no increased APR need have been actually been imposed for Defendant to have failed its disclosure obligations. (Pl. Opp. 6-7). Plaintiff has the better of the argument.

TILA states that

> [i]f *1 or more* late payments under an open end consumer credit plan may result in an increase in the annual percentage rate applicable to the account, the statement required under subsection (b) with respect to the account shall include conspicuous notice of such fact, together with the applicable penalty annual percentage rate, in close proximity to the disclosure required under subparagraph (A) of the date on which payment is due under the terms of the account.

15 U.S.C. § 1637(b)(12)(B) (emphasis added). Here, the billing statements at issue indicate that a consumer will receive "advance notice" prior to the imposition of a penalty APR. (FAC Ex. A, B, E). However, it is unclear whether

this notice will be followed by an opportunity for the consumer to avoid the imposition of the penalty rate.  Notice, in and of itself, does not necessarily suggest that a consumer can avoid the imposition of the penalty APR; it simply makes the consumer aware of the impending rate change.

Furthermore, even if a consumer receives notice of a possible penalty APR followed by an opportunity to avoid the penalty, such notice still fails to satisfy the express language of § 1637(b)(12)(B) absent a prior disclosure on the customer's periodic billing statement.  TILA requires periodic billing statements to disclose the applicable penalty APR where such a rate may be triggered by "1 or more" late payments.  15 U.S.C. § 1637(b)(12)(B).  By arguing that a penalty APR will not be imposed absent notice, Defendant effectively argues that a consumer must make more than one late payment in order to become subject to penalty rates.  But § 1637(b)(12)(B) expressly requires disclosure of the applicable penalty APR where such rate will be triggered by "one or more" late payments.  The fact that notice is interposed between the late payments does not negate the fact that a certain number of late payments will result in a penalty APR; and this fact must, under the plain language of the statute, be disclosed, "together with the applicable penalty annual percentage rate, in close proximity to the disclosure ... of the date on which payment is due under the terms of the account."  15 U.S.C. § 1637(b)(12)(B).

Plaintiff alleges that his account was potentially subject to a penalty APR of 29.99%, yet his May 2014 billing statement makes no mention of any penalty APR in the prominently displayed "Late Payment Warning" on the front

of the statement.  (FAC ¶¶ 19, 21, Ex. E).  Plaintiff has sufficiently stated a claim for violation of TILA's APR disclosure requirements, and Defendant's motion to dismiss that claim is denied.

> **c.   Defendant May Seek Statutory Damages on His APR Disclosure Claim, But Not Injunctive or Declaratory Relief**

Defendant asserts that, even if Plaintiff has otherwise stated a claim for insufficient APR disclosure, Plaintiff was never subjected to a penalty APR, and therefore has no actual damages and is not entitled to any relief under TILA or Regulation Z.  (Def. Br. 14).  In regards to the damages suffered — or not suffered — by Plaintiff, Defendant is correct that Plaintiff could not recover anything on his APR disclosure claim had he brought suit as an individual. *See* 15 U.S.C. § 1640(a)(1), (2)(A).  Plaintiff has, however, filed this matter as a class action, for which 15 U.S.C. § 1640(a)(2)(B) allows damages in "such amount as the court may allow."  Because the alleged violation meets the conditions set forth in 15 U.S.C. § 1640(a)(4), Plaintiff may assert a claim for statutory damages for Defendant's alleged violation of § 1637(b)(12).  *See* 15 U.S.C. § 1640(a)(4) (allowing class statutory damages for, *inter alia*, violations of "any of paragraphs (4) through (13) of section 1637(b) of this title").

Plaintiff's Amended Complaint also seeks injunctive and declaratory relief.  (FAC 17).  Unlike statutory damages, such relief is not explicitly provided for in TILA.  *See* 15 U.S.C. § 1640(a).  While the Second Circuit has not resolved the issue of whether the remedies provided for under § 1640 are exclusive, a number of courts to consider the question have limited recovery

under TILA to the damages provided for in the statute's text.  *See Christ* v. *Beneficial Corp.,* 547 F.3d 1292, 1298 (11th Cir. 2008) (analyzing TILA and finding injunctive relief not available under that statute); *Volovnik* v. *Benzel-Busch Motor Car Corp.*, No. 09 Civ. 10595 (DAB) (JLC), 2010 WL 3629819, at *9 (S.D.N.Y. July 29, 2010), *report and recommendation adopted,* No. 09 Civ. 10595 (DAB) (JLC), 2010 WL 3629815 (S.D.N.Y. Sept. 16, 2010); *Reeder* v. *HSBC USA, Inc.*, No. 09 Civ. 2043 (RMD), 2009 WL 4788488, at *9-10 (N.D. Ill. Dec. 8, 2009) (finding relief available under TILA limited to actual and statutory damages); *Schulken* v. *Washington Mut. Bank, Henderson, NV*, No. 09 Civ. 2708 (LHK), 2011 WL 2940293, at *8 (N.D. Cal. July 20, 2011).

As the Eleventh Circuit has explained, in enacting TILA Congress "designated certain federal agencies, including the Federal Trade Commission, as the primary enforcement agencies of TILA, with the power to enforce compliance through 'all of its functions and powers,' including orders of restitution." *Christ,* 547 F.3d at 1297 (internal brackets and citations omitted). Congress additionally provided private rights of action to consumers, but limited the potential relief to actual damages, statutory damages, and attorney's fees and costs. *Id.* (citing 15 U.S.C. § 1640(a)).  In the context of class actions, Congress further limited the potential relief by capping the recovery at "the lesser of $500,000 or 1 per centum of the net worth of the creditor." *Id.* (citing 15 U.S.C. § 1640(a)(2)(B)).  In light of TILA's "comprehensive statutory scheme of remedies" and Congress's silence as to any equitable relief available to private litigants, the Eleventh Circuit found no

31

implied right to injunctive or other equitable relief under TILA. *Id.* at 1298.
The Court agrees with the Eleventh Circuit's analysis and joins the other
courts who have similarly found that the remedies available to a private
plaintiff under TILA are limited to actual and statutory damages, as set forth in
15 U.S.C. § 1640(a).

### 4. Plaintiff's Breach of Contract Claim Is Dismissed on the Merits

In addition to his claims under TILA, Plaintiff asserts breach of contract
based on Defendant's late crediting of his November 2013 payment. (FAC
¶¶ 65-68). Specifically, Plaintiff alleges that his card agreement with Defendant
incorporated both the requirements of TILA and, by reference, the payment
instructions contained on his billing statements, which in turn required
Defendant to credit conforming payments received by 6:00 p.m. local time on
the date of receipt. (*Id.* at ¶¶ 66, 68). Defendant breached its agreement,
Plaintiff asserts, when it credited his November 2013 payment several days
after the date it was received. (*Id.* at ¶¶ 67, 68).

Plaintiff's contract claim rests entirely upon the contention that Plaintiff
made a conforming payment and was therefore entitled to have his payment
credited on the day of receipt. It fails on this same point. As the Court has
discussed, *supra*, Plaintiff's payment was nonconforming. Consequently
Defendant was not obligated to credit that payment on the date it was received,
and Defendant's breach of contract claim fails on the merits.[6]

---

[6] Relatedly, Defendant contends that (i) Plaintiff's card agreement does not incorporate
the payment instructions contained on Plaintiff's billing statement, and thus the
contractual provision to which Plaintiff refers does not exist, and (ii) Virginia law

### CONCLUSION

For the reasons stated in this Opinion, Defendant's motion to dismiss Plaintiff's claims for the imposition of a late fee and interest charge in violation of TILA and for breach of contract is converted to a motion for summary judgment, and is GRANTED; its motion in the alternative to strike the start date for proposed Classes A and B is therefore DENIED AS MOOT. Its motion to dismiss Plaintiff's claim for APR disclosure violations under TILA is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 16.

The parties are directed to appear for an initial pretrial conference on **February 23, 2016**, at **10:00 a.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. The parties are directed to submit a proposed case management plan and joint status letter no later than **February 18, 2016**, pursuant to the Court's Individual Rules of Civil Practice.

SO ORDERED.

Dated:      February 9, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

precludes recovery for violations of TILA beyond those contained within TILA itself. (Def. Br. 16-17; Def. Reply 5). Because Plaintiff's contract claim fails on the merits, the Court need not consider these additional defenses.

Defendant further contends that, in the event that the Court strikes Plaintiff's breach of contract claim, but not his related TILA claim for an improper late fee and interest charge, the Court should strike the start date of the class period for Classes A and B such that the relevant class periods conform to TILA's one-year statute of limitations. (Def. Br. 23-24). Because the Court dismisses Plaintiff's late fee claim under TILA, however, Defendant's alternative motion to strike is moot.