UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                          )
BRUCE SCHWARTZ,                           )       Case No. 14-CV-9525 (KPF)
individually and on behalf of             )
all others similarly situated,            )
                                          )
                    Plaintiff,            )
                                          )
        - against -                       )
                                          )
                                          )
HSBC BANK USA, N.A.,                      )
                                          )
                    Defendant.            )
                                          )
-----------------------------------------------------x

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss under *Spokeo, Inc. v. Robins*

Brian L. Bromberg
Jonathan R. Miller
BROMBERG LAW OFFICE, P.C.
26 Broadway, 21st Floor
New York, New York 10004
(212) 248-7906

Harley J. Schnall
LAW OFFICE OF HARLEY J. SCHNALL
711 West End Avenue
New York, New York 10025
(212) 678-6546

**Attorneys for Plaintiff**

# Table of Contents

Table of Authorities ................................................................................................. ii

Standard of Review ................................................................................................. 2

Argument ................................................................................................................. 3

   I.   Plaintiff's allegations satisfy the Article III standing requirements ................ 3

    A.   The allegations of the Bank's deficient disclosure show an injury in fact .... 4

       1.   Plaintiff's allegations of injury are personal to him and thus particularized ......................................................................................... 5

       2.   Plaintiff's allegations satisfy the concreteness requirement under *Spokeo* 7

          a.   *Spokeo* allows for suits based on only intangible harms defined by Congress ....................................................................................................... 7

          b.   *Spokeo* allows for actions alleging more than a "bare procedural violation" ..................................................................................................... 9

             (1)   The penalty APR disclosures play a central role in TILA ............. 10

             (2)   Plaintiff's Injuries Resulting from the Deficient LPW Are Concrete 14

             (3)   Only specified disclosure violations are actionable, showing Congressional focus on the "significant" information provided to consumers ....................................................................................... 17

Conclusion ............................................................................................................. 21

# Table of Authorities

**Page(s)**

**Cases**

*Adams v. Plaza Fin. Co.,*
   168 F.3d 932 (7th Cir. 1999) ................................................................ 17

*Balderas v. Countrywide Bank,*
   664 F.3d 787 (9th Cir. 2011) ................................................................ 20

*Bragg v. Bill Heard Chevrolet, Inc.*
   374 F.3d 1060 (11th Cir. 2004) ............................................................ 20

*Cappuccio v. Prime Capital Funding L.L.C.,*
   649 F.3d 180 188 (3d Cir. 2011) ........................................................... 20

*Carter v. Healthport Techs., LLC,*
   822 F.3d 47 (2d Cir. 2016) ..................................................................... 2

*In re Cmty. Bank,*
   418 F.3d 277 (3d Cir. 2005) .................................................................. 19

*DeMando v. Morris,*
   206 F.3d 1300 (9th Cir. 2000) .............................................................. 17

*Fairley v. Turan-Foley Imports, Inc.,*
   65 F.3d 475 (5th Cir. 1995) .................................................................. 20

*Federal Election Comm'n v. Akins,*
   524 U.S. 11 (1998) ............................................................................... 15

*First Nat'l Bank v. Office of the Comptroller of the Currency,*
   956 F.2d 1456 (8th Cir. 1992) .............................................................. 13

*Hauk v. JP Morgan Chase Bank USA,*
   552 F.3d 1114 (9th Cir. 2009) .............................................................. 20

*Inge v. Rock Fin. Corp.,*
   281 F.3d 613 (6th Cir. 2002) ................................................................ 20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ....................................................................... 5, 7, 8

*Mars v. Spartanburg Chrysler-Plymouth, Inc.,*
    713 F.2d 65 (4th Cir. 1983) ................................................................ 20

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) .......................................................................... 8

*Nolles v. State Com. Reorganization School Dist.,*
    524 F.3d 892 (8th Cir. 2008) ............................................................ 5

*Parker v. DeKalb Chrysler Plymouth,*
    673 F.2d 1178 (11th Cir. 1982) ........................................................ 20

*Perkins v. Lukens Steel Co.,*
    310 U.S. 113 ...................................................................................... 5

*Public Citizen v. Department of Justice,*
    491 U.S. 440 (1989) .......................................................................... 15

*Purtle v. Eldridge Auto Sales, Inc.,*
    91 F.3d 797 (6th Cir. 1996) .............................................................. 20

*Reneau v. Mossy Motors,*
    622 F.2d 192 (5th Cir. 1980) ............................................................ 20

*Rubio v. Capital One Bank,*
    613 F.3d 1195 (9th Cir. 2010) .......................................................... 20

*Selevan v. N.Y. Thruway Auth.,*
    584 F.3d 82 ........................................................................................ 3

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .......................................................................... 21

*Smith v. Fid. Consumer Discount Co.,*
    898 F.2d 896 (3d Cir. 1990) .............................................................. 19

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ................................................................*passim*

*Strubel v. Comenity Bank,*
    15-528 ................................................................................................ 21

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...................................................................... 2, 3

*Weeden v. Auto Workers Credit Union, Inc.,*
    1999 WL 191430 (6th Cir. Mar. 19, 1999) ...................................... 20

## Statutes

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ................................................... *passim*

Credit Card Accountability Responsibility and Disclosure Act of 2009,
 P.L. 111-24, 123 Stat. 1734 (May 22, 2009) ...................................... 13, 19

Depository Institutions Deregulation and Monetary Control Act of
 1980 Title V, Pub. L. No. 96-221 ............................................................. 18

Fair Housing Act ......................................................................................................... 16

Federal Advisory Committee Act ............................................................................. 15

Federal Election Campaign Act ................................................................................ 16

## Other Authorities

12 C.F.R. Part 1026 Supp. I, Comment 7(b)(11)-4 ............................................... 19

12 C.F.R. §§ 1026.6(b)(1), 1026.6(b)(2)(i)(D), 1026.60(a)(2),
 1026.60(b)(1)(iv) ...................................................................................................... 9

12 C.F.R. § 1026.7(b)(11) ..................................................................................... 4, 14

12 C.F.R. § 1026.9(c)(2)(v)(A) ................................................................................. 10

12 CFR Part 226 ........................................................................................................ 12

109 Cong. Rec. 2027 (1963) ..................................................................................... 11

113 Cong. Rec. 2042 (1967) ..................................................................................... 15

Antonin Scalia, *The Doctrine of Standing as an Essential Element of
 the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983) ........................... 8

Restatement (First) of Torts §§ 569 ........................................................................... 8

United States Constitution, Article III ................................................................ *passim*

## Introduction

On June 30, 2016, Plaintiff Bruce Schwartz filed a Second Amended Complaint alleging that Defendant HSBC Bank USA, N.A. ("Bank") violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by making incomplete disclosures on his billing statement. More specifically, Schwartz's claim is based on the Bank's failure to furnish a billing statement that disclosed the particulars of the penalty interest rate provision of his account, as required by the statute and the implementing regulations. Schwartz seeks statutory damages on behalf of himself and similarly-situated individuals who received billing statements with such deficient penalty rate disclosures from the Bank.

In its motion to dismiss, the Bank argues that under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), this Court has no subject matter jurisdiction over this action because Schwartz's complaint has not met the requirements for Article III standing. Simply put, the Bank misreads the *Spokeo* decision and misapplies elements of constitutional standing.

Federal courts are limited by Article III of the United States Constitution to reviewing only a "case or controversy," as defined by several requirements. One "case or controversy" requirement is that the plaintiff must allege an "injury in fact," defined in part as an invasion of a legally protected interest that is "concrete and particularized." The Bank only argues that plaintiff has not met the "concrete and particularized" elements of the injury in fact requirement, and thus concedes

that the plaintiff meets all other elements and requirements to maintain standing under Article III.

As discussed below, the Supreme Court has held that a violation of a legal duty to provide information to an individual satisfies the concreteness element – and *Spokeo* only reinforces that holding. Moreover, when the Bank sent Schwartz a billing statement that omitted a mandatory disclosure of a key provision on his account, it exposed  Schwartz to a material risk that he would be misled into overpaying for credit – exactly the kind of risk Congress hoped to eliminate when it enacted TILA. Thus, Schwartz's alleged injury that meets the "concrete and particularized" elements articulated by the Supreme Court in *Spokeo* and its antecedents. As such, Schwartz meets all Article III requirements for standing.

## Standard of Review

"For purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citation omitted). "The task of the district court is to determine whether the [complaint, including the exhibits attached to it,] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quotations and internal brackets omitted). "At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further

particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501.

Argument

### I.  Plaintiff's allegations satisfy the Article III standing requirements

Under Article III of the Constitution, the jurisdiction of federal courts is limited to resolving "cases" or "controversies." U.S. Const., Art. III, § 2. "In order to ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (*quoting W.R. Huff Asset Mgmt. Co. v. Deloitte Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotation marks and brackets omitted)).

To establish that standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547. Schwartz alleges that Defendant violated TILA and its implementing regulations by furnishing him with billing statements that did not adequately disclose the ramifications for not making a payment when due. More specifically, Schwartz alleges that the Late Payment Warning ("LPW") on the front of the billing statement omitted the warning that a missed payment could subject balances on his account to higher annual percentage rates ("Penalty APRs"). ECF # 48, ¶¶ 44-45 and ECF #48-5. Moreover, the LPW omitted the level of the Penalty APR that could apply to his account balances after a missed payment.

Defendant does not dispute that Schwartz has satisfied the last two of the three prongs: it is beyond contention that the injury alleged is traceable to the documents Defendant furnished and that the court's award of damages, costs and fees to Schwartz under TILA's civil liability provision, 15 U.S.C. § 1640(a), would redress that injury. Defendant only contends that Schwartz did not satisfy the first of the three prongs: the requirement that the plaintiff suffer an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548, quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (internal quotation marks omitted). As discussed below, Schwartz's complaint has satisfied all these elements of the injury in fact prong, as well the other two prongs of Article III standing.

## A.  The allegations of the Bank's deficient disclosure show an injury in fact

In its motion to dismiss, Defendant does not dispute, nor can it, that Schwartz has a legal interest in receiving up-to-date and accurate information on his billing statements regarding the penalty rate provision in his credit card agreement, and that he plausibly alleged that this legally protected interest was invaded. See 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.7(b)(11). This Court, though it did not undertake a full standing analysis, recognized as much in its earlier ruling denying Defendant's motion to dismiss this claim in Schwartz's Amended Complaint. ECF #38. Moreover, as Schwartz's claim is based on incomplete and deficient disclosures in one or more of the billing statements Defendant actually

furnished between December 2013 and May 2014, Defendant does not contend that the claim is either "conjectural" or "hypothetical." The only elements in dispute, then, are whether Schwartz's interest qualifies as "particularized" and "concrete."

### 1. Plaintiff's allegations of injury are personal to him and thus particularized

With respect to the "particularized" element of an injury in fact, the Supreme Court clarified, "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n.1. In an action brought by an individual plaintiff, "Article III's case and controversy prerequisite requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Nolles v. State Com. Reorganization School Dist.*, 524 F.3d 892, 901 (8th Cir. 2008), quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotations omitted). The Court exercises jurisdiction where plaintiffs have something personal at stake, as opposed to plaintiffs with impermissible generalized grievances. *See, e.g., Lujan*, 504 U.S. at 573-74 ("a plaintiff raising only a generally available grievance . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large does not state an Article III case or controversy)(punctuation omitted); *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 125 (plaintiffs lack standing because they failed to show injury to "a particular right of their own, as distinguished from the public's interest in the administration of the law").

Here, Schwartz indeed has something personal at stake. He alleges that (1) the standard annual percentage rates ("APRs") of 12.99-21.99% that were in effect on *his* credit card account (2) were, under the agreement, susceptible to being raised by Defendant to much higher penalty APRs of up to 27.24% if he did not make a timely minimum payment when due, yet (3) Defendant failed to disclose this fact in the Late Payment Warning on the billing statement it sent *him* showing a balance due (4) as required to do so by the statute and the implementing regulations. In other word, the legal duty that the Bank owed was a duty that it owed to Schwartz *personally*, by virtue of the contractual relationship between Schwartz and the Bank. There is no dispute that Schwartz makes this claim with respect to *his own credit card account* and the billing statement sent to *him*. Further, there is no dispute that Schwartz *himself* was at risk of a tangible harm — losing the availability of the standard APRs and having to pay more for credit in the way of penalty APRs — had he missed paying the minimum due by the due date. Defendant's contention that this injury is not particularized — notably, an argument it did not see fit to raise at the time it flagged the standing issue in its earlier brief in support of its motion to dismiss the Amended Complaint, ECF #15 at n. 6 — is incorrect on its face.

Defendant argues that because Schwartz does not allege that he was confused about the cost of his credit or about the risk that he would be subject to a penalty APR, he has not satisfied the particularized element. This argument suffers from a misunderstanding of "particularity" as explained in *Spokeo* and its

6

predecessor, *Lujan*. Those cases demonstrate that particularity has nothing to do with the *kind* of harm suffered by the plaintiff. Rather, particularity concerns only whether a defendant has breached a legal duty owed to the plaintiff personally, as opposed to a more generalized legal obligation. Schwartz satisfies this "particularized" element simply by making a plausible showing that Defendant's conduct fell short of its obligation to *him*, personally and individually, under Regulation Z and the Truth in Lending Act. Defendant cites no authority, under constitutional law or federal lending laws, that Plaintiff must have some sense of awareness of the injury at the time it occurred to make out a "particularized" allegation.

### 2. Plaintiff's allegations satisfy the concreteness requirement under *Spokeo*

#### a. *Spokeo* allows for suits based on only intangible harms defined by Congress

Defendant also contends, incorrectly, that Schwartz's allegations are not concrete under *Spokeo*. According to Defendant, Schwartz's failure to allege monetary damages or "that he was injured in any other way" amounts to a failure to meet the concreteness requirement. Defendant's argument must fail, as it simply ignores *Spokeo*'s reasoning and misstates Schwartz's allegations.

The *Spokeo* court remanded that case to the Ninth Circuit to properly evaluate whether the plaintiff's allegations satisfied the requirement of concreteness. *Spokeo*, 136 S. Ct. at 1545. *Spokeo* holds that both tangible and intangible injuries satisfy the requirement. *Id.* at 1549. Where the injury is intangible, courts should consider "whether an alleged intangible harm has a close

relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Id.* As the Court noted, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. *See, e.g.*, Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938)." *Id.*

Importantly, Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law ...." *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578). It "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S. Ct. at 1549. Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Id.*; *see also Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) ("[Congressional] authorization is of critical importance to the standing inquiry: 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'"). Said differently, Congress can create "new rights of action that do not have clear analogs in our common-law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring). Hence Justice Scalia's observation that standing's "existence in a given case is largely within the control of Congress." Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983).

Contrary to Defendant's assertions, *Spokeo* does not stand for the proposition that "Congress's identification of an intangible harm that it seeks to vindicate through statute is insufficient by itself to create a concrete injury." Def. Br. at 18, ECF #52. *Spokeo* says "Article III standing requires a concrete injury even in the context of a statutory violation," but also allows that merely "the *risk* of real harm can[] satisfy the requirement of concreteness." *Spokeo*, 136 S. Ct. at 1549. (emphasis added). Moreover, *Spokeo* allows that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* Significantly, *Spokeo* explicitly states that "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified," and cites with approval two cases where the Court held that the concreteness requirement was met merely because of the plaintiffs' non-receipt of information required by statute to be disclosed to them. *Id.* (citations omitted). Under *Spokeo*, then, Schwartz's non-receipt of penalty APR information, also required by statute to be disclosed to him, satisfies the concreteness element.

### b. *Spokeo* allows for actions alleging more than a "bare procedural violation"

To be sure, *Spokeo* teaches that alleging a "bare procedural violation" is not enough to meet the concreteness element. *Spokeo*, 136 S. Ct. at 1549. But Schwartz alleges much more than a bare procedural violation. Defendant's disclosure at issue here omitted a key term of the credit card account, one that is also required to be conspicuously disclosed on credit applications and agreements in a table known as the "Schumer box." *See* 15 U.S.C. § 1637(c)(1)(A); 12 C.F.R.  §§ 1026.6(b)(1),

1026.6(b)(2)(i)(D), 1026.60(a)(2), 1026.60(b)(1)(iv). Moreover, under Regulation Z, a lender is not required to provide the credit consumer advance notice of a change in terms when that change is "a reduction of any component of a finance or other charge." 12 C.F.R. § 1026.9(c)(2)(v)(A). As such, a new omission of the penalty rate from the Late Payment Warning could easily mislead a credit consumer to believe that the penalty rate provision that had been on the account was eliminated. Further, as discussed in detail below, certain other disclosure violations do not trigger the civil liability provision of TILA, but this omission does. *See* 15 U.S.C. § 1640(a).

As such, the cases Defendant cites in support of its position are inapposite because of the informational injury Schwartz suffered here. As laid out in the allegations, Defendant's violation was an inaccuracy that created a material risk of harm to Schwartz, as well as other similarly situated consumers, not at all like the harmless, bare procedural violation of the "incorrect zip code" cited by the court in *Spokeo*. 136 S. Ct. at 1550.

### c. The misstatement of the penalty APR provision in the late payment warning caused Plaintiff concrete harm under *Spokeo*

#### (1) The penalty APR disclosures play a central role in TILA

In this case, the Plaintiff alleges that the Defendant violated TILA because it failed to disclose, within the Late Payment Warning section on the first page of the billing statement it sent him, (1) that a failure to pay the minimum payment when due could trigger the activation of a penalty rate on his balances, and (2) what the amount of that penalty APR could be. Along with the information about the amount

of any late fee that may be imposed, Congress deemed it essential that creditors arm consumers with this information in monthly billing statements, as shown by the legislative history and construction of the Act.

In the 1960s, when TILA was enacted, Congress became concerned with two serious problems faced by consumers when shopping for credit: first, the non-standardized methods of computing interest that resulted in apples-to-oranges comparisons of rates and, second, the fact that rates alone, in any event, did not reflect the full cost of credit, given the additional fees charged in connection with credit. Senator Douglas, the original proponent of TILA, noted that some creditors "compound the camouflaging of credit by loading on all sorts of extraneous fees, such as exorbitant fees for credit life insurance, excessive fees for credit investigation, and all sorts of loan processing fees which rightfully should be included in the percentage rate statement so that any percentage rate quoted is completely meaningless and deceptive." 109 Cong. Rec. 2027, 2029 (1963). Moreover, there was widespread agreement that some rates charged were shockingly high and some credit extended was harmful. *See, e.g.*, *Consumer Credit Protection Act: Hearings Before the Subcomm. on Consumer Affairs of the H. Comm. on Banking & Currency on H.R. 11601*, 90th Cong. 142 (1967) (hereinafter "*House Hearings*") (testimony of James L. Robertson, Vice Chairman, Board of Governors of the Federal Reserve System) (paying $300 for $150 television set "is too much."); *Id.*, at 70-71 (letter from George A. Ranney of Inland Steel to Rep. Frank Annunzio (Aug. 3, 1967)) (credit extended to workers when it should have

been withheld and the extension of credit "serves to enhance the credit problems to which many employees find themselves subject.").

After several years of hearings that commenced in 1961,[1] Congress enacted TILA in 1968 to "assure a meaningful disclosure of credit terms" so that consumers could comparison shop and avoid expensive and abusive credit." 15 U.S.C. § 1601(a). Furthermore, Congress stated that the informed use of credit enhances economic stabilization and competition among the institutions and firms engaged in extending credit. *Id.* Competition related to the credit price tag, therefore, is salutary for individual consumers. Congress recognized that meaningful disclosure needed to continue past the initial grant of credit, and thus established further disclosure requirements that extended to periodic billing statements. See 15 U.S.C. § 1637(b).

In subsequent decades, credit card issuers came to engage in a number of practices that sharply increased the cost of credit to unaware consumers, including imposing ever-higher late fees and and high penalty interest rates — even on pre-existing balances — on those who missed a payment. Some issuers would consider a payment made on the due date late if it were not made by an early-morning cut-off. *See* Comments [of several consumer advocacy organizations] Regarding Advance Notice of Proposed Rulemaking Review of the Open-End (Revolving) Credit Rules of Regulation Z, Federal Reserve System, 12 CFR Part 226, Docket No. R-1217, n. 61

---

[1] *See, e.g., Truth In Lending Bill: Hearings Before the Subcommittee of the Committee on Banking and Currency United States Senate on S. 1740*, 87th Cong. (July 17-20, 24-27 (1961)).

(collecting cases filed against issuers with cut-off times as early as 9:00 A.M.),
available at http://www.federalreserve.gov/SECRS/2005/March/20050329/R-1217/R-
1217_153_1.pdf (retrieved August 17, 2016), a copy of which is attached as Exhibit
A to the accompanying Declaration in Opposition of Brian L. Bromberg (the
"Bromberg Decl."), dated August 17, 2016. The House and the Senate took note of
this phenomenon, and drafted legislation to curb these practices and make penalties
for lateness fairer and more transparent. *See* H.R. Rep. 111-88 at 10-12 (Apr. 27,
2009); S. Rep. 111-16 at 1-10 (May 4, 2009). The legislation that emerged was the
Credit Card Accountability Responsibility and Disclosure Act of 2009, P.L. 111-24,
123 Stat. 1734 (May 22, 2009) (the "CARD Act").

The CARD Act amended TILA so that credit issuers were required to
conspicuously make certain key disclosures in proximity to each other on the billing
statement, including: (1) the date the customer's payment is due, and (2) the
ramifications, if any, of not making this payment on time. 15 U.S.C. § 1637(b)(12).
Armed with this information, the credit customer can more easily compare the
outstanding balances on his various credit accounts; and, if for some reason, he
cannot pay them all by their due dates, he can take the information provided and
determine how he might prioritize repayment of his accounts. Without the accurate
disclosure of the ramifications of a late payment, just as "[w]ithout the accurate
disclosure of the APR, the borrower is unable to compare credit terms offered by
other lenders, and a central purpose of TILA is defeated." *First Nat'l Bank v. Office*

*of the Comptroller of the Currency*, 956 F.2d 1456, 1462 (8th Cir. 1992) (*quoting* the Comptroller of the Currency).

### (2)    Plaintiff's Injuries Resulting from the Deficient LPW Are Concrete

The failure to accurately and completely disclose within the periodic billing statement the ramifications of not making at least the minimum payment by the payment due date leads to the very harm that drove Congress to enact and amend TILA. These "price tags" on the billing statement provide the consumer with critical information about the terms of his account. Regulation Z, 12 C.F.R. § 1026.7(b)(11); § 1026.5(c) ("The disclosures shall reflect the terms of the legal obligation between the parties."). Omitting these price tags is harmful to the consumer. First, a Late Payment Warning that omits the disclosure that a missed payment could even trigger *any* penalty APR harms the consumer in a concrete way because it subjects him to the risk of the harm — and in some cases, the harm — of losing the standard APRs on his future balances. Second, a Late Payment Warning that omits the *amount* of the penalty APR prevents him from evaluating the consequences of losing the currently applicable APR. The consumer is harmed in a concrete way because he is not fully informed about the account terms, cannot successfully comparison shop, and could easily end up paying more for the credit extended to him than he had to. Consequently, the central purposes of the Act are defeated. Senator Proxmire, who introduced the Truth in Lending bill is 1967, explained the harm the Act attempts to prevent this way:

> The first principle of the bill is to insure that the
> American consumer is given the whole truth about the
> price he is asked to pay for credit …. A crucial provision of
> the bill deals with expressing credit charges as an annual
> percentage rate. Without the knowledge of an annual rate
> it is virtually impossible for the ordinary person to shop
> for the best credit buy …. [T]he definition of finance
> charge, upon which an annual percentage rate is
> calculated, needs to be comprehensive and uniform ….
> Two 12-percent loans are not identical in cost if one
> requires additional charges for credit investigation,
> processing fees, and the like.

113 Cong. Rec. 2042 (1967).

The deprivation of an accurate Late Payment Warning is an "informational injury" similar to those cited by the Court in *Spokeo* as examples of when the personal denial of access to information required by statute is a concrete injury under Article III. *Spokeo*, 136 S. Ct. at 1549-50 ((relying on *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989). In *Public Citizen*, the Court held that the plaintiff had standing to challenge DOJ's failure to provide access to information, the disclosure of which was allegedly required by the Federal Advisory Committee Act, because the inability to obtain such information "constitutes a sufficiently distinct injury to provide standing to sue." 491 U.S. at 449 (plaintiffs sought access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process by attempting to compel the Justice Department and the ABA Committee to comply with FACA). *Akins* stands for a similar point: "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact

15

to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549, *citing Akins*, 524 U.S. at 20–25 (plaintiffs challenged the refusal of the Federal Election Commission to treat a specific political group as a "political committee" so that the record-keeping and disclosure requirements of the Federal Election Campaign Act applied). In these rulings, the Supreme Court found injury in fact in situations where the information sought should have been available to the public.

Earlier, in *Havens Realty Corp. v. Coleman*, the Supreme Court held that the deprivation of a right not to be "the object of a misrepresentation made unlawful under" the Fair Housing Act (FHA) satisfied Article III's "injury in fact" requirement. 455 U.S. 363, 373-74 (1982). In that case, a housing-discrimination "tester" sued a realty company that had falsely informed her that no housing was available. *Id.* at 373-74. The FHA barred misrepresentations about available housing, thus creating a "legal right to truthful information about available housing" pursuant to 42 U.S.C. § 3604(d). *Id.* at 373. The Court concluded that "the Art. III requirement of injury in fact is satisfied" because the tester "allege[d] injury to her statutorily created right to truthful housing information." *Id.* at 374. The Court's opinion in *Spokeo* did not mention *Havens Realty*, much less distinguish or limit it in any way – and, in fact, Justice Thomas's concurrence cites to *Havens Realty* approvingly. *Spokeo*, 136 S. Ct. at 1553.

In the case of information that a creditor must provide truthfully about an actual transaction pursuant to TILA, the concrete nature of the injury is patent, as it was in *Havens Realty*, because the information is not simply of general public

interest, but directly concerns the individual consumer entitled to it. Congress placed these statutory duties upon creditors specifically for the benefit of individual consumers. *See* 15 U.S.C. § 1601(a) (purposes of the Act include meaningful disclosure of credit terms and costs so that *the* consumer will be informed in a meaningful way). Justice Thomas, in his concurrence in *Spokeo*, agreed that: "If Congress has created a private duty owed personally to Robins to protect *his* information, then the violation of the legal duty suffices for Article III injury in fact." *Spokeo*, 136 S. Ct. at 1554. Accurate penalty APR disclosures are central to informing the consumer of the real price *that he or she will pay* for credit. "[TILA's] relevant substance is truth." *Adams v. Plaza Fin. Co.*, 168 F.3d 932, 936 (7th Cir. 1999) "The Act is not a usury law; it does not limit interest rates; all it requires is truthful and (it is hoped) informative disclosure of the interest rate and the other terms of credit." *Id*. The Ninth Circuit ruled that the creditor denied the consumer the statutory right to disclosure under TILA where a change in terms notice did not reflect the legal obligation and "therefore [she] suffered injury in fact for purposes of Article III standing." *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (*citing FEC v. Akins,* 524 U.S. 11).

> (3)   **Only specified disclosure violations are actionable, showing Congressional focus on the "significant" information provided to consumers**

Deference to Congress's identification of harms caused by TILA violations that meet Article III requirements is particularly appropriate in light of the great care that Congress has taken in identifying which TILA violations are actionable.

Section 1640 provides a private right of action for violations only of the rules contained in Parts B (credit transactions), D (credit billing), and E (consumer leasing) of the Act. 15 U.S.C. § 1640 (first paragraph). This means that none of the sections of the Act included in Part A (General Provisions) and Part C (Credit Advertising and Limits on Credit Card Fees) are actionable. In addition, Congress reduced the number of violations for which statutory damages are available when it amended the Act in 1980. Truth in Lending Simplification and Reform Act, Title V of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-221, *codified at* 15 U.S.C. §§ 1601–1615. Congress changed TILA "in order to provide the consumer with clearer credit information, make creditor compliance easier, [and] limit creditor civil liability for statutory penalties to only significant violations…." S. Rep. No. 96-368, at 16 (1979), *reprinted in* 1980 U.S.C.C.A.N. 236, 252. In particular, Congress amended TILA's civil liability provision to limit the availability of statutory damages for violations of the disclosure requirements found in § 1637 (open-end credit) and § 1638 (closed-end credit) to certain enumerated provisions. 15 U.S.C. § 1640(a) (last paragraph).[2] Notably, when Congress amended the billing statement disclosure requirements of §1637(b) in 2009, it made available statutory damages for violations of the new penalty rate disclosure requirements in § 1637(b)(12), as well.

---

[2] Sections 1637 and 1638 are housed in Part B. As a result of the 1980 amendments, rules addressing other disclosures and prohibiting certain loan terms and identified acts or practices found in sections other than sections 1637 and 1638 remain actionable.

18

### (4)   Inaccurate or incomplete disclosure of the LPW, outside of the applicable tolerances, is to be strictly enforced

To be sure, under 15 U.S.C. § 1604(a), Congress delegated to the Federal Reserve Board, and then to the Bureau of Consumer Financial Protection ("CFPB"), the task of prescribing regulations to implement the Late Payment Warning and other disclosures required by the TILA, as amended by the CARD Act; and the regulators granted creditors some leeway in making these disclosures under Regulation Z. For example, Regulation Z allows the "issuer that imposes a range of late payment fees or [penalty] rates on a credit card account . . . [to] state the highest fee or rate along with an indication lower fees or rates could be imposed." 12 C.F.R. Part 1026 Supp. I, Comment 7(b)(11)-4. Similarly, "[i]f a late payment fee or penalty rate is triggered after multiple events, such as two late payments in six months, the card issuer may, but is not required to, disclose the late payment and penalty rate disclosure each month." *Id.*, Comment 7(b)(11)-3.

Unless Regulation Z carves out exceptions such as these, a violation of the statutory requirement to accurately and completely disclose the potential activation of the penalty rate provision and the penalty APR within the LPW triggers civil liability. 15 U.S.C. § 1640(a). And for these omissions or inaccuracies, TILA imposes strict liability for statutory damages.[3] The message is clear: Congress's

---

[3] Several circuit courts hold that TILA is a strict liability statute and rejected the "technical" defense to liability that creditors raise periodically. *In re Cmty. Bank*, 418 F.3d 277, 305 (3d Cir. 2005) ("[S]trict liability is imposed on lenders and on their assignees if the APR of a loan is materially misstated."); *Smith v. Fid. Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir. 1990) ("A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute

action in specifically targeting the penalty disclosures on billing statements

demonstrates its view that they are vital to the successful achievement of the Act's

goals and are the ones most critical for consumers, without which consumers suffer

the most significant harm. Congress could not have given a clearer indication of its

determination that this informational injury creates a case or controversy.

## II. The CFPB agrees with the above application of *Spokeo* to TILA actions for statutory damages based on disclosure errors of omission

The very organization responsible for promulgating the rules and regulations

interpreting TILA that are at issue here has expressly taken the position that

---

regardless of the nature of the violation or the creditor's intent."); *Mars v. Spartanburg Chrysler-Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir. 1983) ("the Act and the regulations implementing it must be absolutely complied with and strictly enforced"); *Reneau v. Mossy Motors,* 622 F.2d 192, 195 (5th Cir. 1980) ("the technical requirements of the TILA and Regulation Z must be strictly enforced if standardization of terms permitting meaningful comparisons of available credit by consumers is to be achieved"); *Weeden v. Auto Workers Credit Union, Inc.,* 1999 WL 191430, at *4 (6th Cir. Mar. 19, 1999) ("Even technical or minor violations of the Act impose liability on the lender."); *Purtle v. Eldridge Auto Sales, Inc.,* 91 F.3d 797, 801 (6th Cir. 1996) ("'[O]nce a court finds a violation of the TILA, no matter how technical, the court has no discretion as to the imposition of civil liability.'") (quoting *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976)); *Balderas v. Countrywide Bank,* 664 F.3d 787, 791 (9th Cir. 2011) (reiterating statement in earlier decision that technical or minor TILA violations impose liability; misstatement of rescission deadline by one day extends rescission period); *Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1181 (11th Cir. 1982) ("Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant."). *See also Cappuccio v. Prime Capital Funding L.L.C.,* 649 F.3d 180 188 (3d Cir. 2011) (TILA should be construed liberally in favor of the consumer); *Rubio v. Capital One Bank,* 613 F.3d 1195, 1202 (9th Cir. 2010) (same); *Hauk v. JP Morgan Chase Bank USA,* 552 F.3d 1114, 1118 (9th Cir. 2009) (same); *Bragg v. Bill Heard Chevrolet, Inc.* 374 F.3d 1060, 1065 (11th Cir. 2004) (same); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 621 (6th Cir. 2002) (same); *Fairley v. Turan-Foley Imports, Inc.,* 65 F.3d 475, 479 (5th Cir. 1995) (same).

consumers, like Plaintiff, have standing to pursue claims like those here. Although

Defendant devotes a page to discussing the appeal pending before the Second

Circuit in *Strubel v. Comenity Bank*, 15-528, Defendant fails to mention the amicus

briefs filed by the CFPB. In *Strubel*, the CFPB has filed two amicus briefs, one pre-

*Spokeo* and one post-*Spokeo*, which both agree with Plaintiff's interpretation of

standing under TILA and Article III. Attached as <u>Exhibits B and C</u> to the

accompanying Bromberg Decl. are copies of these amicus briefs. Plaintiff

respectfully submits that the CFPB's positions on TILA are entitled to deference

under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

## Conclusion

For the foregoing reasons, this Court should conclude that Schwartz meets

the requirements for Article III standing.

Dated:      August 17, 2016
            New York, New York


                         /s/ Brian L. Bromberg
                         Brian L. Bromberg