**BROMBERG LAW OFFICE, P.C.**

Brian L. Bromberg (Admitted in NY & CA)                                                  26 Broadway, 21st Floor
Jonathan R. Miller, Associate (Admitted in NY, MO & NC)                  New York, NY 10004
                                                                                                                  Phone: (212) 248-7906
                                                                                                                  Fax:    (212) 248-7908

December 16, 2016

Via ECF & Email: Failla_NYSDChambers@nysd.uscourts.gov
Honorable Katherine Polk Failla, U.S.D.J.
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *Schwartz v. HSBC Bank USA, N.A.*, Case No. 14-CV-9525 (KPF)

Dear Judge Failla:

My office, together with co-counsel, represents Plaintiff Bruce Schwartz in the above-captioned case. On November 28, 2016, this Court granted the parties permission to submit letter briefs discussing the relevance of the Second Circuit's recent decision in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), to the pending Motion to Dismiss.

The *Strubel* case addressed a different disclosure, and different portions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, than the ones at issue in this case. Thus, the last part of the Second Circuit's decision, in which that Court analyzed whether two omissions from Comenity Bank's disclosure violated TILA, are not relevant to Defendant's Motion to Dismiss. But the first part of *Strubel* is relevant to the question of whether Mr. Schwartz has standing to bring this action.

As the Honorable Reena Raggi wrote on behalf of the panel, the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), did not "categorically . . . preclude[] violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing. Indeed, if that had been the [Supreme] Court's ruling, it would not have remanded the case for further consideration of whether the particular procedural violations alleged

entail a degree of risk sufficient to meet the concreteness requirement as clarified in *Spokeo*. In short, some violations of statutorily mandated procedures may entail the concrete injury necessary for standing." *Strubel*, 842 F.3d at 189 (internal quotation marks and citation omitted). Judge Raggi further explained that, under *Spokeo*, "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Id.* at 190. Finally, the Second Circuit identified the key concrete interest that Congress intended to protect by enacting TILA: consumers' interest in "avoid[ing] the uninformed use of credit . . . ." *Id.* (quoting 15 U.S.C. § 1601(a)). In short, the Second Circuit's interpretation of *Spokeo* is altogether different from Defendant's.

In *Strubel*, the Second Circuit held that Ms. Strubel had standing to bring two of her claims, but lacked standing to bring the other two. Thus, applying the principles of *Strubel* to the facts of this case is a simple matter of determining whether the violations alleged by Mr. Schwartz are like the concrete *Strubel* claims or the non-concrete *Strubel* claims.

When one lays the *Strubel* claims alongside Mr. Schwartz's claims, it becomes readily apparent that the claims in this case are more similar to the claims that the *Strubel* court found to be concrete. The Second Circuit held that Comenity's failure to disclose information concerning an automatic payment feature was not concrete, given that Comenity did not even offer an auto-pay feature. *Id.* at 192. And the Second Circuit held that another of Ms. Strubel's claims – Comenity's failure to disclose that it must communicate with consumers within 30 days of a dispute even after correcting the error from which the dispute arose – failed to give rise to standing, because Ms. Strubel could not show how the omission could have changed her credit behavior or the credit behavior of other consumers. *Id.* at 193-94.

But two of the *Strubel* claims gave rise to standing: Comenity's failure to disclose that the right to dispute a charge disappears once the charge is fully paid, and Comenity's failure to disclose that certain protections were not available for convenience-check purchases. The Second Circuit held that these injuries were concrete, because they served to protect Ms. Strubel's interest in avoiding uninformed use of credit. *Id.* at 190-91. Unlike the others, these two disclosures provided important information Ms. Strubel required before she could use the credit product in a knowledgeable way, and Ms. Strubel had plausibly explained how Comenity's omissions could adversely affect consumer behavior. *See Id.* at 190-92.

2

Mr. Schwartz's claims are much closer to these claims than they are to the claims found not to be concrete in *Strubel*; if anything, Mr. Schwartz's claims are even *more* clearly related to the concrete interest in avoiding uninformed use of credit than any of the *Strubel* claims. This is because, as Plaintiff has already explained in his Opposition to Defendant's Motion to Dismiss, the disclosures of a possible penalty APR is quite literally a "price tag" that was supposed to inform Mr. Schwartz of the costs of using his HSBC credit card in certain ways. *See* ECF#53 at 19 (ECF pagination). "The consumer is harmed in a concrete way because she is not fully informed about the account terms, cannot successfully comparison shop, and could easily end up paying more for the credit extended to him than he had to." *Id.* In other words, the incorrect "price tags" attached to the various credit cards in his wallet could very well have led him to unwisely choose between two extensions of credit — that is, pay off one credit card rather than another — based on incorrect information.

It is quite easy to see how the use of the HSBC credit product by a consumer such as Mr. Schwartz could be adversely affected by the omission. This is because the way one *pays* one's credit-card bills is just as important a part of the "use of credit" as how one uses a credit card to make *purchases*. In a revolving credit account such as a credit card, credit is extended when a consumer makes a purchase, but it also continues to be extended, depending on how much a consumer pays each month. The penalty APR disclosure that HSBC omitted would have described the costs of these later extensions of credit under various circumstances. *Accord* 12 C.F.R. 1026.6(b)(3) (categorizing late fees, returned payment fees, and finance charges as "charges imposed as part of an open-end (not home-secured) plan"). *Cf.* 15 U.S.C. § 1637(b)(11)(B) (requiring disclosure of the difference between the *cost* of paying down a credit card debt over 36 months versus the *cost* of paying down the debt making only minimum monthly payments). In short, the omitted penalty APR disclosure is intended to communicate the *cost* of paying less than the monthly minimum due, as well as the *cost* of future extensions of credit should the consumer fail to pay the monthly minimum.

(One cannot simply dismiss the importance of these costs by sanctimoniously claiming that one always ought to pay the minimum amount due. Paying at least the monthly minimum is the ideal. But the hard reality is that consumers are sometimes laid off or suffer expensive medical emergencies. Consumers who encounter such cash-flow problems must choose between paying one card's or another's monthly minimum – or even between paying a card's monthly minimum or paying a utility bill. These are the critical choices

that many consumers must confront – and it is urgently important that consumers are armed with the information necessary to confront them.)

Consumers deserve to have accurate information that will allow them to make these kinds of credit-use decisions in informed ways. And, under TILA and Regulation Z, Mr. Schwartz was legally entitled to have *this particular piece of information* disclosed to him in each monthly statement prepared by HSBC. This is because Congress, after observing that lack of information concerning a penalty APR could adversely affect consumers' credit behavior, made a legislative judgment that *monthly* disclosures were the best way to counter that risk. In other words, while Congress could have decided to counter *some* risk by requiring a one-time penalty APR disclosure, it instead undertook to *further* reduce that risk by requiring creditors to perpetually remind consumers of the penalty APR, and to specify what the potential penalty rate might be. And it is hard to argue with Congress's legislative judgment here – after all, a monthly disclosure serves to prime consumers' credit behavior in a much different way than a one-time disclosure. The bottom line is that, by failing to provide the penalty APR disclosure each and every month, HSBC increased the risk that Mr. Schwartz would be harmed by using the credit product in an uninformed way.

In summary, *Strubel's* interpretation of *Spokeo* pulls the rug out from under Defendant's subject-matter jurisdiction challenge. In its Motion to Dismiss, HSBC's concreteness argument boiled down to the following:

> Plaintiff alleges that the disclosure omission "serves to impinge on consumers' awareness of the cost of credit." ECF 48, ¶ 43. While Plaintiff does not cite any statute or regulation supporting that theory of harm, presumably Plaintiff is referring to the statement in 15 U.S.C. § 1601(a) that the purpose of TILA is [sic] "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." However, Plaintiff's invocation of that declaration of purpose without any additional injury is insufficient to create a concrete harm.

ECF#52 at 21-22 (ECF pagination). Now that the Second Circuit has interpreted *Spokeo*, however, it is clear that HSBC's line of argument is untenable – in fact, the Second Circuit said the complete opposite:

> These disclosure requirements do not operate in a vacuum . . . . Rather, each serves to protect a consumer's concrete interest in "avoid[ing] the uninformed use of credit, a core object of the TILA. 15 U.S.C. § 1601(a). These procedures afford such protection by requiring a creditor to notify a consumer . . . of how the consumer's own actions can affect his rights with respect to credit transactions. A consumer who is not given notice of *his* obligations is likely not to satisfy them and, thereby, unwittingly to lose those very credit rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit [citing to *Spokeo*]. Having alleged such procedural violations, Strubel was not required to allege "any *additional* harm" to demonstrate the concrete injury necessary for standing.

*Strubel*, 842 F.3d at 189 (emphases in original) (internal citations omitted). The Second Circuit further noted that it was not "suggest[ing] that a consumer must have occasion to use challenged procedures to demonstrate concrete injury from defective notice." *Id.* at 193. Similarly, here, it is not necessary for Mr. Schwartz to allege that he actually incurred a penalty APR; rather, it is enough for him to explain how the faulty disclosure could have adversely affected his use of the HSBC credit product.

Plaintiff thanks the Court for its consideration of these matters.

Respectfully,

/s/ Jonathan R. Miller
Jonathan R. Miller


cc:     All Attorneys of Record (via ECF & Email)