| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>:<br>BRUCE SCHWARTZ, individually and on   :<br>behalf of all others similarly situated,            :<br>:<br>                                         Plaintiff,    :<br>:<br>                  v.                                   :<br>:<br>HSBC BANK USA, N.A.,                             :<br>:<br>                                   Defendant.  :<br>:<br>------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: January 9, 2017<br><br>14 Civ. 9525 (KPF)<br><br>OPINION AND ORDER |

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Bruce Schwartz sued Defendant HSBC Bank USA, N.A., for alleged violations of the Truth in Lending Act ("TILA" or the "Act"), 15 U.S.C. §§ 1601-1677f, and its implementing regulations.  In a previous opinion, the Court held that Plaintiff had sufficiently stated a claim for violation of TILA disclosure requirements concerning penalty annual percentage rates (or "APRs").  *See Schwartz* v. *HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 681-82 (S.D.N.Y. 2016) ("*Schwartz I*").  Following the Supreme Court's decision in *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540 (2016), Plaintiff filed a Second Amended Complaint (the "SAC"), which Defendant now moves to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).  Because the SAC fails plausibly to plead a concrete and particularized injury, Defendant's motion is granted.

## BACKGROUND[1]

### A. Factual Background

The Court assumes familiarity with its prior Opinion, *see Schwartz I*, 160 F. Supp. 3d at 669-71, and only briefly recites the facts relevant to the instant motion.

Plaintiff maintains an open-end consumer credit card account with Defendant. (SAC ¶¶ 8, 10-11). Defendant's billing statements to Plaintiff from January 2014 through May 2014 failed properly to disclose (i) that failure to make a timely monthly minimum payment could subject Plaintiff's account balance to a penalty APR; and (ii) what the amount of that penalty APR would be. (*Id.* at ¶¶ 20-21, 44-45). Specifically, Plaintiff alleges that these billing statements "neither disclosed that [Plaintiff] was already subject to a penalty [of] 27.24% or any other penalty APR, nor made any disclosure under the 'Late Payment Warning' advisory that a failure to make the minimum payment due by the due date could subject [Plaintiff] to the imposition of a penalty APR of 27.24%." (*Id.* at ¶ 44). Plaintiff alleges that these omissions violated mandatory disclosure provisions under TILA's statutory and regulatory scheme. (*Id.* at ¶ 45). *Schwartz I* held, *inter alia*, that such allegations

---

[1] This Opinion draws on facts from the Second Amended Complaint ("SAC", Dkt. #48), the well-pled facts of which are taken as true for purposes of this motion. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For convenience, Defendant's moving brief is referred to as "Def. Br." (Dkt. #52); Plaintiff's brief in opposition as "Pl. Opp." (Dkt. #53); Defendant's reply as "Def. Reply" (Dkt. #55); Defendant's supplemental brief as "Def. Suppl. Br." (Dkt. #59); and Plaintiff's supplemental brief as "Pl. Suppl. Br." (Dkt. #60).

"sufficiently stated a claim for violation of TILA's APR disclosure requirements." 160 F. Supp. 3d at 681-82.[2]

## B.   Procedural Background

Plaintiff filed the Complaint on December 1, 2014, and a First Amended Complaint (the "FAC") on March 27, 2015. (Dkt. #2, 12). In *Schwartz I,* issued February 9, 2016, the Court partially converted Defendant's motion to dismiss into one for summary judgment, and awarded Defendant summary judgment as to Plaintiff's claims for breach of contract and for improperly imposing a late fee and interest charge in violation of TILA. *See* 160 F. Supp. 3d at 676-79, 683-84. The Court denied, however, Defendant's motion to dismiss Plaintiff's claim for failing properly to disclose penalty APRs in violation of TILA.[3] *See id.* at 681-82. Following a February 23, 2016 conference, the Court stayed this action pending the Supreme Court's anticipated decision in *Spokeo*, which was issued on May 16, 2016, and revised on May 24, 2016. Thereafter, the Court held a conference on June 9, 2016, and set a schedule for the filing of the SAC and of Defendant's instant motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Dkt. #45, 49).

---

[2]   *Schwartz I* concerned the First Amended Complaint ("FAC"), while the instant motion concerns the Second Amended Complaint. Among other things, the second amendment added allegations of penalty APR disclosure violations in monthly statements from January 2014 through May 2014, rather than in May 2014 alone, and revised the alleged penalty APR from 29.99% to 27.24%. *Compare* 160 F. Supp. 3d 666, 682 (S.D.N.Y. 2016) (upholding allegation that Defendant failed properly to disclose penalty APR of 29.99% in May 2014 billing statement (citing FAC ¶¶ 19, 21, Ex. E)), *with* SAC ¶ 45 (alleging that Defendant failed properly to disclose penalty APR of 27.24% in January 2014 through May 2014 billing statements). Neither change alters the present analysis.

[3]   The Court also denied as moot Defendant's motion in the alternative to strike the start date for Plaintiff's proposed classes. *See Schwartz I,* 160 F. Supp. 3d at 684.

Plaintiff filed the SAC on June 30, 2016 (Dkt. #48); Defendant its motion to dismiss and supporting brief on July 18, 2016 (Dkt. #51-52); Plaintiff his opposition brief and declaration on August 17, 2016 (Dkt. #53-54); and Defendant its reply brief on August 31, 2016 (Dkt. #55).  After briefing was completed, the Second Circuit decided *Strubel* v. *Comenity Bank*, 842 F.3d 181 (2d Cir. 2016).  This Court subsequently granted the parties leave to submit supplemental letter briefs concerning the effect, if any, of *Strubel* on the pending motion, which briefs the parties filed on December 16, 2016.  (Dkt. #59-60).[4]

## DISCUSSION

**A.     Applicable Law**

   **1.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it."  *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).  A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

---

[4]     The parties have submitted additional notices of supplemental authority, as well.  (*See* Dkt. #56, 61-62).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted). Where subject matter jurisdiction is contested, a district court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). And where, as here, "the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading") … [t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

### 2.   Truth in Lending Act and Regulation Z

Congress enacted TILA to "'protect consumers against inaccurate and unfair credit billing and credit card practices' and promote 'the informed use of credit' by 'assuring a meaningful disclosure' of credit terms." *Strubel*, 842 F.3d at 186 (quoting *Vincent* v. *The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013)); *see also* 15 U.S.C. § 1601(a). The Act "promotes this goal largely by 'imposing

5

mandatory disclosure requirements on those who extend credit to consumers in the American market.'"  *Id.* (quoting *Mourning* v. *Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363 (1973)).  TILA affords consumers a cause of action for, *inter alia*, statutory damages against a creditor who fails to comply with certain disclosure requirements.  *See* 15 U.S.C. § 1640(a)(2) (providing for an individual consumer in most such cases to be awarded statutory damages between $500 and $5,000, and for a possible class award of up to $1,000,000); *see also id.* § 1637(b)(12) (setting forth disclosure requirements related to late payment deadlines and penalties).

As relevant here, the Act requires the creditor of an open-end consumer credit card account "[to] transmit to the obligor [i.e., the credit card holder], for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth" applicable disclosures.  15 U.S.C. § 1637(b).  The TILA disclosure provision concerning interest rate hikes for late payments provides:

> If 1 or more late payments under an open end consumer credit plan may result in an increase in the annual percentage rate applicable to the account, the statement required under subsection (b) with respect to the account shall include conspicuous notice of such fact, together with the applicable penalty annual percentage rate, in close proximity to the disclosure required under subparagraph (A) of the date on which payment is due under the terms of the account.

*Id.* § 1637(b)(12)(B).

TILA's implementing regulations, known as Regulation Z, clarify that a creditor must disclose "on each periodic statement" "[t]he amount of any late

6

payment fee and any increased periodic rate(s) (expressed as an annual percentage rate(s)) that may be imposed on the account as a result of a late payment." 12 C.F.R. § 1026.7(b)(11)(i)(B).[5] Regulation Z also requires that the payment due date be "disclosed on the front of the first page of the periodic statement," and that "[t]he amount of the late payment fee and the annual percentage rate(s) … be stated in close proximity to the due date." *Id.* § 1026.7(b)(13).

In the SAC, Plaintiff alleges that Defendant's billing statements from January 2014 through May 2014 failed properly to disclose certain notices required under 15 U.S.C. § 1637(b)(12)(B) and 12 C.F.R. § 1026.7(b)(11), (b)(13). As noted, *Schwartz I* upheld substantially these allegations. *See* 160 F. Supp. 3d at 681-82.

### 3. Standing

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff bears the burden of establishing (i) "injury in fact," (ii) a "causal connection" between that injury and the complained-of conduct, and (iii) a likelihood "that the injury will be redressed by a favorable decision." *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted); *accord Spokeo*, 136 S. Ct. at 1547. Here, Defendant argues that Plaintiff fails adequately to plead the first element — that he suffered an injury

---

[5]   "The Supreme Court has afforded *Chevron* deference to Regulation Z, insofar as it reflects reasonable agency interpretations of ambiguities in … TILA." *Strubel* v. *Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016) (citing *Household Credit Servs., Inc.* v. *Pfennig*, 541 U.S. 232, 238-39 (2004)).

7

in fact. (Def. Br. 14-20). To demonstrate injury in fact, a plaintiff must show he suffered (i) "an invasion of a legally protected interest," (ii) "that is concrete and particularized," and (iii) "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted).

Plaintiff has pled the invasion of a legally protected interest under TILA that is actual and not conjectural or hypothetical, because the law requires Defendant, as the creditor of an open-end consumer credit card account, to provide Plaintiff, as the card holder, a periodic statement with a conforming notice of certain penalty APR disclosures. *See* 15 U.S.C. § 1637(b)(12)(B); 12 C.F.R. § 1026.7(b)(11), (b)(13).

Plaintiff's standing thus turns on whether he has pled adequately a "concrete and particularized" injury to his TILA-conferred interest. To be "particularized," "the injury must affect the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1, and to be "concrete," the injury "must be *de facto*; that is, it must actually exist," *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted); *see also id.* ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'").

The Supreme Court recently elaborated upon the concreteness requirement in *Spokeo*. There, the Court evaluated whether a consumer had standing to bring a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, which "seeks to ensure 'fair and accurate credit

8

reporting.'" *Spokeo*, 136 S. Ct. at 1545 (quoting § 1681(a)(1)). The plaintiff alleged that the defendant consumer reporting agency violated the FCRA because, *inter alia*, the agency had failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports and, consequently, disseminated inaccurate information about the plaintiff. *Id.* at 1545-46 (citing § 1681e(b)). The Court ultimately vacated the Ninth Circuit's finding of injury in fact because that finding was based on an incomplete analysis that probed the particularity of the plaintiff's injury but not also its concreteness. *Id.* at 1550.

The Court reiterated that intangible injuries may be concrete, observing that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549; *id.* ("'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment))). A "risk of real harm" can thus also satisfy Article III's concreteness requirement. *Id.*

However, "a bare procedural violation, divorced from any concrete harm" is insufficient; even in the context of a statutory violation, a concrete injury is necessary. *Spokeo*, 136 S. Ct. at 1549. For example, the Court noted, an FCRA procedural violation might not lead to the dissemination of inaccurate information and, even if it did, the dissemination of inaccurate information might not actually "cause harm or present any material risk of harm" to the

plaintiff.  *Id.* at 1550.  At the same time, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id.* at 1549 (emphasis in original).

**B.   Analysis**

Defendant argues that this Court lacks subject matter jurisdiction because Plaintiff fails plausibly to plead the concrete and particularized injury necessary to establish Article III standing.  The Court agrees.

**1.   Plaintiff Fails Plausibly to Plead a Concrete Injury**

With respect to the concreteness requirement, Defendant principally argues that the SAC identifies an injury that is not concrete.  (*See, e.g.*, Def. Br. 17 ("The harm that Plaintiff alleges in his Complaint is not 'concrete.'")).  It is unclear whether Defendant also argues that the SAC is defective because its allegations of injury are inadequately pled.  The Court takes up the latter inquiry in any event, consistent with its "independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte* … [including] whether a plaintiff has standing under Article III to pursue its claim."  *Jennifer Matthew Nursing & Rehab. Ctr.* v. *U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010) (internal quotation marks and citations omitted); *see generally Chan Ah Wah* v. *HSBS Bank PLC*, No. 13 Civ. 4789 (JPO), 2014 WL 2453304, at *1 (S.D.N.Y. June 2, 2014) (discussing jurisdictional pleading). The Court finds that the SAC's allegations of injury are conclusory and not

plausibly pled and, thus, does not reach the issue whether the type of harm alleged is cognizable as a concrete injury under *Spokeo* and its nascent progeny.

### a. Concrete Injury After *Spokeo* and *Strubel*

After briefing on the instant motion was completed, the Second Circuit issued *Strubel* v. *Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), its first decision interpreting *Spokeo*.[6] The Second Circuit understood *Spokeo* to instruct that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Id.* at 189 (quoting *Spokeo*, 136 S. Ct. at 1549).

*Strubel*'s application of *Spokeo* is instructive. The alleged TILA violations in *Strubel* were based on the defendant's failure to disclose that:

> (i)   "cardholders wishing to stop payment on an automatic payment plan had to satisfy certain obligations";
>
> (ii)  "the bank was statutorily obliged not only to acknowledge billing error claims within 30 days of receipt but also to advise of any corrections made during that time";
>
> (iii) "certain identified rights pertained only to disputed credit card purchases for which full payment had not yet been made, and did not apply to cash advances or checks that accessed credit card accounts"; and
>
> (iv)  "consumers dissatisfied with a credit card purchase had to contact [the defendant] in writing or electronically."

---

[6]   Prior to *Strubel*, the Second Circuit cited to *Spokeo* in three summary orders, none of which engaged with *Spokeo*'s substantive holding. *See Cruper-Weinmann* v. *Paris Baguette Am., Inc.*, 653 F. App'x 81 (2d Cir. 2016); *Bank* v. *All. Health Networks, LLC*, No. 15-4037-cv, 2016 WL 6128043 (2d Cir. Oct. 20, 2016); *Sikhs for Justice Inc.* v. *Kerry*, No. 15-4018-cv, 2016 WL 5791561 (2d Cir. Oct. 4, 2016).

*See* 842 F.3d at 185-86.  The Second Circuit held that alleged disclosure failures related to (iii) disputed credit card purchases and (iv) proper modes of communication established concrete injury because "each serves to protect a consumer's concrete interest in 'avoid[ing] the uninformed use of credit,' a core object of the TILA."  *Id.* at 190 (quoting 15 U.S.C. § 1601(a)).  *Strubel* continued:

> These procedures afford such protection by requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions.  A consumer who is not given notice of *his* obligations is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him.  For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit.

*Id.* at 190-91; *see also id.* at 194 ("[A] consumer [need not] have occasion to use challenged procedures to demonstrate concrete injury from defective notice.").

By contrast, *Strubel* held that the plaintiff had failed to plead concrete injury arising from the disclosure failures related to (i) automatic payment plans and (ii) billing errors, because there was no showing that those failures "created a 'material risk of harm' — or, indeed, any risk of harm at all — to [the plaintiff's] interest in avoiding the uninformed use of credit."  842 F.3d at 191-92; *see also id.* at 193.

As earlier noted, this Court does not determine whether the TILA violation alleged here caused an injury that was concrete under *Spokeo* and

*Strubel* because the Court finds that the SAC's bare assertions of injury are conclusory and inadequately pled.

### b. The SAC's Allegations of Concrete Injury

The SAC adequately specifies how Defendant's periodic statements violated TILA and Regulation Z. (*See, e.g.*, SAC ¶ 44 (alleging that statements "neither disclosed that [Plaintiff] was already subject to a penalty 27.24% or any other penalty APR, nor made any [conforming] disclosure … that a failure to make the minimum payment due by the due date could subject him to the imposition of a penalty APR of 27.24%."); *id.* at ¶ 45 ("Because [Plaintiff's] account was not already subject to a 27.24% penalty rate in the billing months of January through May of 2014, the Bank's failure to properly disclose within the statements furnished for those months, of the potential imposition of a penalty APR of 27.24% for a late payment was in violation of TILA and Regulation Z.")).

The problem for Plaintiff is that his specificity with respect to violation is outpaced by his imprecision with respect to consequent injury. The sum total of the SAC's allegations of injury caused by Defendant's violations is:

- "Upon information and belief, the consumers of the Class suffered a concrete harm and a material risk of concrete harm because the Bank's omissions or misstatements impinged on their awareness of the cost of credit." (SAC ¶ 24).
- "The failure to so furnish the amount of a potential Penalty APR, as mandated by Congress and the Bureau, serves to impinge on consumers' awareness of the cost of credit, constituting a concrete harm and creating a material risk of concrete harm." (*Id.* at ¶ 43).

> - "The Bank's omission in the periodic statements of the mandated Late Payment Warning Penalty APR disclosure constituted a concrete harm and created a material risk of concrete harm to [Plaintiff] and to other credit consumers." (*Id.* at ¶ 46).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and citations omitted); *see also Warth* v. *Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."). Mere incantations of "concrete harm" and "material risk of concrete harm," or of the purpose statement of TILA, are plainly insufficient to plead plausibly that Plaintiff suffered a concrete injury. *See Morrison*, 547 F.3d at 170 ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."); *see also Carter*, 822 F.3d at 56 ("The task of the district court is to determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." (internal quotation marks and alterations omitted)). Accordingly, Plaintiff's conclusory allegations fail to demonstrate an injury in fact. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("[B]are assertions ... are conclusory and not entitled to be assumed true.").

Somewhat curiously, the detail concerning injury that is noticeably missing from the SAC is present in Plaintiff's opposition brief:

> First, a Late Payment Warning that omits the disclosure that a missed payment could even trigger any penalty

14

> APR harms the consumer in a concrete way because it subjects him to the risk of the harm — and in some cases, the harm — of losing the standard APRs on his future balances. Second, a Late Payment Warning that omits the amount of the penalty APR prevents him from evaluating the consequences of losing the currently applicable APR. The consumer is harmed in a concrete way because he is not fully informed about the account terms, cannot successfully comparison shop, and could easily end up paying more for the credit extended to him than he had to. Consequently, the central purposes of the Act are defeated.

(Pl. Opp. 14). It is also present in his supplemental brief:

> [T]he disclosures of a possible penalty APR is quite literally a "price tag" that was supposed to inform [Plaintiff] of the costs of using his [Defendant-issued] credit card in certain ways ... [T]he incorrect "price tags" attached to the various credit cards in his wallet could very well have led him to unwisely choose between two extensions of credit — that is, pay off one credit card rather than another — based on incorrect information.

(Pl. Suppl. Br. 3).

To be sure, the injuries that Plaintiff allegedly suffered as a result of Defendant's penalty APR disclosure violations — as those injuries are described in Plaintiff's briefing — are not unlike the injuries that the Second Circuit recognized as concrete in *Strubel*. *See Strubel*, 842 F.3d at 190-91. But, critically, well-pled allegations describing Plaintiff's injuries are found nowhere in the SAC. *Cf. Treiber* v. *Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 3 (2d Cir. 2016) (summary order) ("While plaintiffs' assertion of price gouging might, properly pled, demonstrate injury, because the allegation is wholly conclusory and unsupported by any facts, it is insufficient to support standing."). And Plaintiff's briefing cannot fill so gaping a hole in his pleading. *See Jordan* v.

*Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks and alterations omitted)).  The Court therefore finds that Plaintiff fails to carry his burden to clearly allege facts demonstrating a concrete injury to support standing.  *See Spokeo*, 136 S. Ct. at 1547.

### 2. Plaintiff Fails Plausibly to Plead a Particularized Injury

Having found that the SAC fails plausibly to plead a concrete injury, the Court need not reach the issue of particularization.  *See Spokeo*, 136 S. Ct. at 1548 (stating that concreteness and particularization requirements are distinct and must each be satisfied).  The Court nonetheless briefly notes that the pleading failure described above also infects Plaintiff's allegations of a particularized injury.

To be particularized, "*the injury* must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1 (emphasis added); *see also Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("[T]he party who invokes the court's authority [must] show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." (internal quotation marks omitted)); *Strubel*, 842 F.3d at 191 n.10 ("[P]articularity requires that one sustain a grievance distinct from the body politic, not a grievance unique from that of any identifiable group of persons." (internal citation omitted)).

16

While the SAC identifies alleged violations of Plaintiff's procedural rights under TILA (*see, e.g.,* SAC ¶¶ 44-45), its allegations that Plaintiff personally and individually suffered an injury as a result of those violations are conclusory and inadequately pled (*see id.* at ¶ 46 (alleging that penalty APR disclosure violation "constituted a concrete harm and created a material risk of concrete harm to [Plaintiff] and to other credit consumers."); Def. Reply 3 ("None of [the SAC's] allegations describes any injury sustained by Plaintiff as a result of the alleged omission of the Penalty APR in the Late Payment Warning on the billing statement, and Plaintiff, therefore, fails to adequately plead standing.")).  *See Spokeo*, 136 S. Ct. at 1547; *Iqbal*, 556 U.S. at 678.

Once again, Plaintiff's opposition brief supplies non-conclusory assertions, this time of particularized injury, that are nowhere found in Plaintiff's pleading.  (*See, e.g.,* Pl. Opp. 6 ("[Plaintiff] himself was at risk of a tangible harm — losing the availability of the standard APRs and having to pay more for credit in the way of penalty APRs — had he missed paying the minimum due by the due date.")).  And, once again, the Court will not permit Plaintiff to supply through his briefing what properly belonged in his pleading.  *See Jordan*, 91 F. Supp. 3d at 500.  Consequently, the Court finds that Plaintiff has failed to carry his burden to clearly allege facts demonstrating a particularized injury to support standing.  *See Spokeo*, 136 S. Ct. at 1547.

### 3. Plaintiff Is Not Granted Leave to Amend But Dismissal of the SAC Is Without Prejudice

Plaintiff has not sought leave to amend his complaint a third time and, accordingly, the Court affords him no such opportunity.  *See Shields* v.

17

*Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) ("Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought."); *Chen* v. *Antel Commc'ns, LLC*, 653 F. App'x 43, 44 (2d Cir. 2016) (summary order) (same); *cf. Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Generally, we will not deem a request for leave to amend insufficient on the basis of form alone."); *cf. Ronzani* v. *Sanofi S.A.*, 899 F.2d 195, 198-99 (2d Cir. 1990) (holding that district court abused its discretion in failing to allow repleading where the plaintiff had made no motion to replead but had noted in his supplemental opposition brief his desire to replead if the motion were granted).

Nonetheless, the Court's dismissal of the SAC for lack of Article III standing is without prejudice because the dismissal is one for lack of subject matter jurisdiction, which deprives the Court of its ability to issue a prejudicial dismissal. *See Carter*, 822 F.3d at 54; *Hernandez* v. *Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:	January 9, 2017
	New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge